IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01875-PAB-KMT

ESTATE OF DERAMUS DEWAYNE LEMUEL, by and through its personal representative
      Elizabeth Lemuel,
ELIZABETH LEMUEL, individually,
Z.D.-L.M.L., individually, a minor, by and through their legal guardian Elizabeth Lemuel,
D.J.L., individually, a minor, by and through their legal guardian Elizabeth Lemuel,
D.S.L., individually, a minor, by and through their legal guardian Elizabeth Lemuel, and
Z.A.T.L., individually, a minor, by and through their legal guardian Elizabeth Lemuel,

      Plaintiffs,

v.

EL PASO COUNTY, COLORADO,
ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
DEPUTY DANIEL LEBARON, in his individual capacity,
DEPUTY BRITTANY STUBBS, in her individual capacity,
DEPUTY ANN BELL, in her individual capacity,
DEPUTY BRANDON BURGESS, in his individual capacity,
SERGEANT KIMBERLY MILLER, in her individual capacity,
SERGEANT JAMES RODRIGUEZ, in his individual capacity,
DEPUTY JOHN BRIENZA, in his individual capacity,
DEPUTY CHADWICK YOUNG, in his individual capacity,
SERGEANT CODY WRIGHT, in his individual capacity,
DEPUTY KEVIN THORPE, in his individual capacity,
NURSE DIANNA BEDIA, in her individual capacity, and
NURSE ROBIN BAUER, in her individual capacity,

      Defendants,

and

EL PASO COUNTY, COLORADO,
DEPUTY DANIEL LEBARON, in his individual capacity,
DEPUTY BRITTANY STUBBS, in her individual capacity,
DEPUTY ANN BELL, in her individual capacity,
DEPUTY BRANDON BURGESS, in his individual capacity,
SERGEANT KIMBERLY MILLER, in her individual capacity,
SERGEANT JAMES RODRIGUEZ, in his individual capacity,

DEPUTY JOHN BRIENZA, in his individual capacity,
DEPUTY CHADWICK YOUNG, in his individual capacity,
SERGEANT CODY WRIGHT, in his individual capacity, and
DEPUTY KEVIN THORPE, in his individual capacity,

       Third-Party Plaintiffs,

v.

UCH-MHS d/b/a UNIVERSITY OF COLORADO HEALTH MEMORIAL HOSPITAL
CENTRAL,
LESLIE MOATS, M.D., and
REBECCA EIGHTEEN, RN,

       Third-Party Defendants.
_____

**COUNTY DEFENDANTS' AMENDED ANSWER TO COMPLAINT,
THIRD-PARTY COMPLAINT AND JURY DEMAND**
_____

       Defendants/Third-Party Plaintiffs EL PASO COUNTY, COLORADO; DEPUTY
DANIEL LEBARON; DEPUTY BRITTANY STUBBS (whose current last name is
WILLIAMS); DEPUTY ANN BELL (whose current last name is HANZICH); DEPUTY
BRANDON BURGESS; SERGEANT KIMBERLY MILLER; SERGEANT JAMES
RODRIGUEZ; DEPUTY JOHN BRIENZA; DEPUTY CHADWICK YOUNG; SERGEANT
CODY WRIGHT; and DEPUTY KEVIN THORPE (hereinafter collectively referred to as
"County Defendants") submit the following Amended Answer, Third-Party Complaint and
Jury Demand in response to the Complaint (Doc. 1) filed by Plaintiffs.  The numbered
paragraphs below correspond to the numbered paragraphs in the Complaint.

       1.     As to paragraph 1 of Plaintiffs' Complaint, County Defendants affirmatively
state that on August 1, 2018, at or around 0350 hours, Deramus Lemuel ("Lemuel") was

brought into the Sally Port area of the El Paso County, Colorado, Criminal Justice Center (CJC) by Colorado Parole Officers after having received medical clearance from UCH-MHS d/b/a University of Colorado Health Memorial Hospital Central ("Memorial Hospital Central") for Lemuel's transport to and incarceration at CJC.  County Defendants further affirmatively state that or around 03:55 hours, Lemuel was escorted into Cell #3 in CJC's Intake and Release, where he vigorously resisted efforts to control him - such resistence including, but not limited to, tensing his body, pulling away from detention deputies, tucking his arms under his body, attempting to bite one or more of the deputies, spitting on one or more of the deputies, and failure to obey multiple verbal orders.  County Defendants deny that they killed Lemuel, deny that they violated any constitutional right of Lemuel, deny that they used excessive force in attempting to control Lemuel or otherwise, deny they failed to provide adequate medical care and treatment or otherwise were deliberately indifferent to Lemuel's medical needs, serious or otherwise, deny that they are responsible for or otherwise caused his death and otherwise deny the allegations in paragraph 1 of the Complaint.

2.     County Defendants deny the underlying premise of and the allegations in paragraph 2 of the Complaint.

3.     County Defendants deny the underlying premise of and the allegations in paragraph 3 of the Complaint.

4.     County Defendants deny the underlying premise of and the allegations in paragraph 4 of the Complaint.

5.      As to paragraph 5 of the Complaint, County Defendants admit and affirmatively state that because of Lemuel's efforts to bite and spit on the deputies, a spit hood was placed on Lemuel.  County Defendants further admit and affirmatively state that during the course of attempts to control Lemuel, one or more deputies, in an effort to get Lemuel into a safety smock, some of Lemuel's clothing was cut off using a cut down tool. County Defendants otherwise deny the allegations in paragraph 5 of the Complaint.

6.      As to paragraph 6 of the Complaint, County Defendants admit that according to the Coroner's Report, Lemuel had, in part, hypertensive cardiovascular disease, cardiomegaly, concentric left ventricular hypertrophy, and did have a cardiac arrest. County Defendants affirmatively state that the Coroner's Report also reported Lemuel to have a repeated history, in part, of cigarette smoking and illicit drug use.  County Defendants are otherwise without sufficient knowledge of the remaining allegations in paragraph 6 of the Complaint and, therefore, deny the same.

7.      County Defendants deny the underlying premise of and the allegations in paragraph 7 of the Complaint.

8.      As to paragraph 8 of the Complaint, County Defendants admit and affirmatively state that at or about 04:30 hours, Lemuel was transported from CJC to Memorial Hospital Central and on information and belief did not regain consciousness before he died on August 14, 2018.  County Defendants otherwise deny the allegations in paragraph 8 of the Complaint.

9.      As to paragraph 9 of the Complaint, County Defendants admit that Lemuel

died on August 14, 2018.  County Defendants further admit and affirmatively state that the

Coroner's Report states, in part:

> Based on the case history and autopsy findings, is our opinion that Deramus Lemuel, a 38-year-old Black male, died as a result of complications of global hypoxic/ischemic brain injury due to cardiac arrest occurring in the setting of illicit drug intoxication and physical restraint by law enforcement.  It is also our opinion that hypertensive cardiovascular disease contributed to the cause of death.
>
> The ruling of homicide in this case is a medical diagnosis and does not imply intent or wrongdoing by law enforcement officers.  The ruling of homicide as the manner of death is in accordance with the guidelines of the National Association of Medical Examiners regarding deaths occurring during a physical struggle with law enforcement officers.

County Defendants otherwise deny the allegations in paragraph 9 of the Complaint.

10.    County Defendants deny the underlying premise of and the allegations in

paragraph 10 of the Complaint.

11.    County Defendants admit that this Court has jurisdiction over Plaintiffs'

federal claims brought pursuant to 42 U.S.C. § 1983 under 28 U.S.C. §1331 and that this

Court may exercise supplemental jurisdiction under 42 U.S.C. § 1367.  County Defendants

otherwise deny the allegations in paragraph 11 of the Complaint.

12.    As to paragraph 12 of the Complaint, County Defendants admit venue is

proper in the District Court of Colorado and that at all relevant times, the individual County

Defendants were residents of the State of Colorado.  County Defendants are otherwise

without sufficient knowledge regarding the remaining allegations in paragraph 12 of the

Complaint and, therefore, deny the same.

13.    As to paragraph 13 of the Complaint, County Defendants admit that Lemuel

was a citizen of the United States and a resident of Colorado.  County Defendants are otherwise without sufficient knowledge regarding the remaining allegations in paragraph 13 of the Complaint and, therefore, deny the same.

14.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 14 of the Complaint and, therefore, deny the same.

15.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 15 of the Complaint and, therefore, deny the same.

16.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 16 of the Complaint and, therefore, deny the same.

17.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 17 of the Complaint and, therefore, deny the same.

18.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 18 of the Complaint and, therefore, deny the same.

19.     As to paragraph 19 of the Complaint, County Defendants admit that El Paso County is a political subdivision of the State of Colorado.  County Defendants further admit that the El Paso County Sheriff's Office (EPSO) operates CJC, which is located at 2739 E. Las Vegas Street, Colorado Springs, Colorado 80906.  County Defendants otherwise deny the allegations in paragraph 19 of the Complaint.

20.     County Defendants deny the underlying premise of and the allegations in paragraph 20 of the Complaint.

21.     County Defendants deny the underlying premise of and the allegations in

paragraph 21 of the Complaint.

22.     County Defendants admit the allegations in paragraph 22 of the Complaint.

23.     County Defendants admit the allegations in paragraph 23 of the Complaint.

24.     County Defendants admit the allegations in paragraph 24 of the Complaint.

25.     County Defendants admit the allegations in paragraph 25 of the Complaint.

26.     As to paragraph 26 of the Complaint, County Defendants admit that Defendant Deputy Kimberly Miller was a citizen of the United States and a resident of Colorado.  County Defendants further admit that Deputy Miller was acting within the scope of her official duties and employment and under color of state law in her capacity as a law enforcement officer. County Defendants otherwise deny the allegations in paragraph 26 of the Complaint.

27.     As to paragraph 27 of the Complaint, County Defendants admit that Defendant Sergeant James Rodriguez was a citizen of the United States and a resident of Colorado.  County Defendants further admit that Sergeant Rodriguez was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer. County Defendants otherwise deny the allegations in paragraph 27 of the Complaint.

28.     County Defendants admit the allegations in paragraph 28 of the Complaint.

29.     County Defendants admit the allegations in paragraph 29 of the Complaint.

30.     As to paragraph 30 of the Complaint, County Defendants admit that Defendant Sergeant Cody Wright was a citizen of the United States and a resident of

Colorado.  County Defendants further admit that Sergeant Wright was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer. County Defendants otherwise deny the allegations in paragraph 30 of the Complaint.

31.      County Defendants admit the allegations in paragraph 31 of the Complaint.

32.      As to paragraph 32 of the Complaint, County Defendants admit that these persons are referred to as "Individual EPSO Defendants."

33.      As to paragraph 33 of the Complaint, County Defendants admit that records of the Colorado Secretary of State indicate that Armor Correctional Health Services, Inc. d/b/a Armor Health is a privately owned Colorado corporation with its principal office located at 4960 SW 72nd Avenue, Suite 400, Miami, FL 33155, and that its registered agent in Colorado is CT Corporation System located at 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112.  County Defendants further admit and affirmatively state that at all times relevant to the claims set out in the Complaint, Armor Health provided certain inmate medical services as set out in a services contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 33 state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 33 of the Complaint and, therefore, deny the same.

34.      As to paragraph 34 of the Complaint, County Defendants admit that Armor

Health is a private corporation. The balance of the allegations in paragraph 34 state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 34 of the Complaint and, therefore, deny the same.

35.     As to paragraph 35 of the Complaint, County Defendants admit that these persons are referred to in the Complaint as "Entity Defendants."

36.     As to paragraph 36 of the Complaint, County Defendants admit that Defendant Nurse Dianna Bedia was at all times relevant to the claims set out in the Complaint a citizen of the United States. County Defendants further admit that Nurse Bedia was at all times relevant to the claims set out in the Complaint a nurse employed by Armor Health and acting in the course and scope of her employment. County Defendants are otherwise without sufficient knowledge as to the remaining allegations in paragraph 36 of the Complaint and, therefore, deny the same.

37.     As to paragraph 37 of the Complaint, County Defendants admit that Defendant Robin Bauer was at all times relevant to the claims set out in the Complaint a citizen of the United States.  County Defendants further admit that Defendant Bauer was at all times relevant to the claims set out in the Complaint a nurse employed by Armor Health and acting in the course and scope of her employment. County Defendants are otherwise without sufficient knowledge as to the remaining allegations in paragraph 37 of the Complaint and therefore deny the same.

38.     As to paragraph 38 of the Complaint, County Defendants agree that these persons are referred to as "Medical Defendants."

39.     As to paragraph 39 of the Complaint, County Defendants are without sufficient knowledge regarding the allegations in paragraph 39 of the Complaint and, therefore, deny the same.

40.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 40 of the Complaint and, therefore, deny the same.

41.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 41 of the Complaint and, therefore, deny the same.

42.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 42 of the Complaint and, therefore, deny the same.

43.     County Defendants are without sufficient knowledge regarding the allegations in paragraph 43 of the Complaint and, therefore, deny the same.

44.     County Defendants deny the underlying premise of and the allegations in paragraph 44 of the Complaint and affirmatively state that Lemuel was in poor health with numerous diagnosed medical and psychiatric conditions including, but not limited to, cardiovascular disease; cardiomegaly; concentric left ventricular hypertrophy; bipolar disorder; anti-social personality disorder; illicit drug use of various drugs including, but not limited to, methamphetamine and ecstacy for which he had consumed on or about July 31, 2018, and a cigarette smoker.

45.     County Defendants are without sufficient knowledge regarding the allegations

in paragraph 45 of the Complaint and, therefore, deny the same.

46.     As to paragraph 46 of the Complaint, County Defendants admit and affirmatively state that on the evening of July 31, 2018, Lemuel was arrested in Colorado Springs, Colorado, at least in part for a parole violation. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 46 of the Complaint and, therefore, deny the same.

47.     As to paragraph 47 of the Complaint, County Defendants admit and affirmatively state that at some time following his arrest an open plastic bag of what was suspected to be methamphetamine was found inside Lemuel's mouth. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 47 of the Complaint and, therefore, deny the same.

48.     As to paragraph 48 of the Complaint, County Defendants admit and affirmatively state that at some time following his arrest an open plastic bag of what was suspected to be methamphetamine was found inside Lemuel's mouth. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 48 of the Complaint and, therefore, deny the same.

49.     As to paragraph 49 of the Complaint, County Defendants admit and affirmatively state that at some time following his arrest and after an open plastic bag of what was suspected to be methamphetamine was found inside Lemuel's mouth, officers suspected that Lemuel had ingested much more methamphetamine than what was found in the plastic bag. County Defendants are without sufficient knowledge regarding the

11

remaining allegations in paragraph 49 of the Complaint and, therefore, deny the same.

50.     As to paragraph 50 of the Complaint, County Defendants admit and affirmatively state that at some time following his arrest and after an open plastic bag of what was suspected to be methamphetamine was found inside Lemuel's mouth, officers suspected that Lemuel had ingested much more methamphetamine than what was found in the plastic bag and believed that he may have ingested a dangerous or lethal amount of methamphetamine and/or other drugs and transported him to Memorial Hospital Central. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 50 of the Complaint and, therefore, deny the same.

51.     County Defendants deny the underlying premise of and the allegations in paragraph 51 of the Complaint.

52.     As to paragraph 52 of the Complaint, County Defendants admit and affirmatively state that, according to the medical records of Memorial Hospital Central, Lemuel arrived at the emergency department of Memorial Hospital Central at approximately 21:55 hours on July 31, 2018. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 52 of the Complaint and, therefore, deny the same.

53.     As to paragraph 53 of the Complaint, County Defendants deny that Lemuel underwent numerous tests to determine the effect of his ingestion of methamphetamine or other drugs or alcohol and affirmatively state that the medical professionals did not administer any toxicological or other tests to determine whether Lemuel had ingested

methamphetamine or other drugs or alcohol until after his return from CJC. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 53 of the Complaint and, therefore, deny the same.

54.    As to paragraph 54 of the Complaint, County Defendants admit and affirmatively state that Lemuel was administered Ativan which belongs to a group of drugs called benzodiazepines and that it is used, in part, to treat anxiety disorders and seizure disorders. County Defendants admit and further affirmatively state that there are potential serious side effects of Ativan including slowed breathing and respiratory failure and that Ativan is contraindicated when there is evidence of alcohol use  as its interactions may, in part, increase the risk of convulsions in a person with seizure disorder and increases the risk of panic attacks. The interaction of Ativan and alcohol may also cause additional negative and cascading interactions with other drugs and substances. County Defendants are otherwise without sufficient knowledge regarding the remaining allegations in paragraph 54 of the Complaint and, therefore, deny the same.

55.    As to paragraph 55 of the Complaint, County Defendants admit and affirmatively state that Lemuel remained at the Memorial Hospital Central emergency department where he exhibited serious symptoms of methamphetamine intoxication. County Defendants are without sufficient knowledge of whether Lemuel remained at Memorial Hospital Central emergency department because of concerns that he had ingested a potentially dangerous amount of methamphetamine or other drugs and affirmatively state that, according to the medical records of Memorial Hospital Central,

Lemuel's symptoms were thought to be due to alcohol intoxication. County Defendants are otherwise without sufficient knowledge regarding the remaining allegations in paragraph 55 of the Complaint and, therefore, deny the same.

56.     As to paragraph 56 of the Complaint, County Defendants admit and affirmatively state that during his stay at Memorial Hospital Central's emergency department, Lemuel exhibited symptoms of dangerous and lethal methamphetamine intoxication including, but not limited to, mental and physical impairment. County Defendants are otherwise without sufficient knowledge regarding the remaining allegations in paragraph 56 of the Complaint and, therefore, deny the same.

57.     As to paragraph 57 of the Complaint, County Defendants admit and affirmatively state that the effects of intoxication from methamphetamine can be long-lasting. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 57 of the Complaint and, therefore, deny the same.

58.     As to paragraph 58 of the Complaint, County Defendants admit and affirmatively state that methamphetamine may cause many physical and mental symptoms including, but not limited to, psychomotor agitation that can range from restlessness to delirium; severe muscle spasms; hyperthermia; mydriasis; diaphoresis; hallucinations; psychosis; anxiety; cardiovascular effects due primarily to adrenergic stimulation; hypertension; dysrhythmias; and myocardial ischemia/infarction. County Defendants further admit that Lemuel presented to Memorial Hospital Central with many of these symptoms. County Defendants are without sufficient knowledge regarding the remaining allegations

14

in paragraph 58 of the Complaint and, therefore, deny the same.

59.    As to paragraph 59 of the Complaint, County Defendants admit and affirmatively state that the medical records of Memorial Hospital Central record that at approximately 00:45 hours, after being discharged to CJC, Julie Greenwald, RN, noted that:

> Attempted to have pt walk to wheelchair for d/c, took 3 people to get pt to walk, uncooperative, pt is diaphoretic, shaking, talking non-sensical, asked Dr. Moats if pt could stay a while longer prior to d/c for monitoring, was told to move pt to care unit 4.

County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 59 of the Complaint and, therefore, deny the same.

60.    As to paragraph 60 of the Complaint, County Defendants admit and affirmatively state that the medical records of Memorial Hospital Central record that at approximately 01:10 hours, after being discharged and then returned, Rebecca Eighteen, RN, recorded that:

> Pt transferred from CU1 per physician's orders.  Writer received report at handover. Apparently Pt was suspected to have swallowed unknown amount of drugs in order to avoid arrest by CSPD.  Pt had been medicated with Ativan 2 mg IM and had been cleared for discharge to CJC.  However, physician ordered that Pt be transferred to CU4 for further monitoring before being taken to CJC.  Pt's vital signs had stabilized after administration of Ativan, although he appeared to be experiencing some muscle spasms and rigidity secondary to possible ingestion of methamphetamine.  Pt brought over in bed, hands cuffed in front of him.  Writer address Pt, who responded by mumbling and grunting, and turning head away.  Pt was tossing his head from side to side, then periodically relaxing.  Eyes remained closed.  Pt was positioned with head of bed slightly elevated, respirations between 20-22. O2 between 94%-96% on R/A.  Pt somewhat diaphoretic, although afebrile. Writer used manual BP cuff to assess accurate BP as Pt too agitated to remain still for long.

County Defendants are otherwise without sufficient knowledge regarding the remaining allegations in paragraph 60 of the Complaint and, therefore, deny the same.

61.    As to paragraph 61 of the Complaint, County Defendants admit and affirmatively state that the medical records of Memorial Hospital Central record that at approximately 02:30 hours on August 1, 2018, Rebecca Eighteen, RN, recorded that:

> Decreasing severity of muscle twitches and restlessness noted.  Pt mumbling, opening eyes, looking at staff and mumbling again. Pt noted to be dozing lightly at times, mumbling in sleep.  Writer requested order for Benadryl 50 mg IM to further calm Pt.  Medication was administered into left deltoid.

County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 61 of the Complaint and, therefore, deny the same.

62.    As to paragraph 62 of the Complaint, County Defendants admit and affirmatively state that the medical records of Memorial Hospital Central record that at approximately 00:45 hours on August 1, 2018, Julie Greenwald, RN, "called CJC RN (per parole PD request), notified them of pt's HR, BP, meds given, was told pt was OK to go to CJC."  County Defendants also admit and affirmatively state that Lemuel was discharged for a second time at or about 03:16 hours on August 1, 2018.  County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 62 of the Complaint and, therefore, deny the same.

63.    County Defendants are without sufficient knowledge regarding the allegations in paragraph 63 of the Complaint and, therefore, deny the same.

64.    As to paragraph 64 of the Complaint, County Defendants admit and

affirmatively state that parole Officers Luis Flores and Daniel Chavez transported Lemuel to CJC arriving around 3:53:00 hours on August 1, 2018.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 64 of the Complaint and, therefore, deny the same.

65.    As to paragraph 65 of the Complaint, County Defendants admit and affirmatively state that one of the parole officers had State Patrol dispatch radio ahead to CJC advising them that assistance would be needed in the Sally Port with an aggressive male being transported to CJC.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 65 of the Complaint and, therefore, deny the same.

66.    As to paragraph 66 of the Complaint, County Defendants admit and affirmatively state that at approximately 3:53:30 hours[1], Sergeant Miller, Deputy LeBaron, Deputy Stubbs, Deputy Bell, and Nurse Bedia met the parole officers and Lemuel in the CJC Sally Port.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 66 of the Complaint and, therefore, deny the same.

67.    As to paragraph 67 of the Complaint, on information and belief, County Defendants admit and affirmatively state that Nurse Bedia was asked to meet the parole officers and Lemuel on his arrival in the Sally Port of CJC.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 67 of the

---

[1] These times are obtained from the CJC video surveillance recording system and the time stamp on that recording.

Complaint and, therefore, deny the same.

68.     County Defendants deny the underlying premise of and the allegations in paragraph 68 of the Complaint.

69.     As to paragraph 69 of the Complaint, County Defendants admit and affirmatively state that Deputy Bell included in her report of the incident that she observed Lemuel seated in the back seat of the parole officer's vehicle and that his "body was shaking uncontrollably with tight, clenched fists."  County Defendants affirmatively state that Deputy Bell's report further states that Lemuel was uncooperative, failed to answer questions, and refused to get out of the vehicle on his own.  Deputy Bell further reports that Lemuel had been at Memorial Hospital Central for several hours and had been cleared by Memorial Hospital Central medical staff to be brought to CJC.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 69 of the Complaint and, therefore, deny the same.

70.     As to paragraph 70 of the Complaint, County Defendants admit and affirmatively state that Sergeant Miller states in her report that she knew Lemuel from previous incarcerations and responded to the Sally Port to assist.  County Defendants admit that Sergeant Miller hoped that she had some rapport with Lemuel.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 70 of the Complaint and, therefore, deny the same.

71.     As to paragraph 71 of the Complaint, County Defendants admit and affirmatively state that Deputy LeBaron set out in his report, in part, as follows:

18

> Sgt. Miller had told us she had some rapport with Mr. Lemuel so she initially attempted to talk to him.  Sgt. Miller attempted to get his attention, but Mr. Lemuel wouldn't respond.  She even nudged him with her foot against his legs and I didn't see him even acknowledge her.  Mr. Lemuel was staring straight at him and tensing up his arms.  I saw both legs twitching rapidly and Mr. Lemuel was clenching his teeth.  I saw no acknowledgment of us from Mr. Lemuel until I grabbed him by his arm and encouraged him out of the vehicle.  He wouldn't come on his own so I applied significant upward pressure which got him to stand up with our assistance.  Deputy Stubbs took control of the left side and I had the right side.  Due to the tense muscles and unresponsiveness we decided to move him straight into the facility.

County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 71 of the Complaint and, therefore, deny the same.

72.     As to paragraph 72 of the Complaint, County Defendants admit and affirmatively state that Deputy LeBaron set out in his report, in part, as follows:

> Sgt. Miller had told us she had some rapport with Mr. Lemuel so she initially attempted to talk to him.  Sgt. Miller attempted to get his attention, but Mr. Lemuel wouldn't respond.  She even nudged him with her foot against his legs and I didn't see him even acknowledge her.  Mr. Lemuel was staring straight ahead of him and tensing up his arms.  I saw both legs twitching rapidly and Mr. Lemuel was clenching his teeth.  I saw no acknowledgment of us from Mr. Lemuel until I grabbed him by his arm and encouraged him out of the vehicle.  He wouldn't come on his own so I applied significant upward pressure which got him to stand up with our assistance.  Deputy Stubbs took control of the left side and I had the right side.  Due to the tense muscles and unresponsiveness we decided to move him straight into the facility.

County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 72 of the Complaint and, therefore, deny the same.

73.     As to paragraph 73 of the Complaint, County Defendants admit and affirmatively state that Deputy Burgess states in his report, in part, as follows:

> At approximately 03:55 hours, Deputies LeBaron and Stubbs entered intake

escorting Mr. Lemuel.  Deputy LeBaron was controlling Mr. Lemuel's right arm in a mechanical advantage control hold (MACH) escort hold.  Deputy Stubbs was controlling Mr. Lemuel's left arm in a mechanical advantage control hold (MACH) escort hold.  Mr. Lemuel appeared to be unable to walk without assistance.  Deputies LeBaron and Stubbs escorted Mr. Lemuel into intake cell number 3 as other responding deputies followed them to the cell.

County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 73 of the Complaint and, therefore, deny the same.

74.    As to paragraph 74 of the Complaint, County Defendants admit and affirmatively state that Deputy Stubbs stated in her report, in part, as follows:

At approximately 0350 hours, I was notified by Sergeant Kim Miller #92029 that Parole Officers Luis Flores #334 and Daniel Chavez were in the Sally Port requesting assistance with a combative inmate.  I responded to the Sally Port area with Deputy Daniel Lebaron #13079, Deputy Ann Bell #13138, Sgt. Miller, and Medical Staff Member (MSM) Diane Bedia #C17091.  MSM Bedia checked the medial discharge paperwork for Mr. Deramus Lemuel DOB: 03/04/1980 and spoke with the arresting Parole Officers.  Mr. Lemuel was appearing to sweat and did not use any verbal communication during our interaction in the Sally Port as the seat belt was secured around him inside the vehicle and he was handcuffed in the front of his person.  Sgt Miller attempted to speak with Mr. Lemuel based on her previous rapport with him and to get him to comply with safely exiting the vehicle.  Mr. Lemuel was not verbally answering about not fighting with staff.  Deputy Lebaron spoke with Mr. Lemuel and unbuckled his seat belt.  Deputy Lebaron and I assisted Mr. Lemuel out of the vehicle to escort him into CJC.  While escorting Mr. Lemuel into CJC, he began to flex his arms and periodically stop walking.  I maintained control of the left side of Mr. Lemuel as Deputy Lebaron maintained control of his right side.  I gave Mr. Lemuel verbal commands to continue walking and to stop tensing his arms.

County Defendants otherwise deny the allegations in paragraph 74 of the Complaint.

75.    As to paragraph 75 of the Complaint, County Defendants admit and affirmatively state that Nurse Bedia directed that Lemuel be changed into a safety smock.

County Defendants otherwise deny the allegations in paragraph 75 of the Complaint.

20

76.     As to paragraph 76 of the Complaint, County Defendants admit and affirmatively state that a safety smock is a single-piece fabric garment designed so that it cannot be tied into a noose, and is otherwise designed so that a wearer might not use the garment to harm himself.  County Defendants are otherwise without sufficient knowledge regarding the allegations in paragraph 76 of the Complaint and, therefore, deny the same.

77.     As to paragraph 77 of the Complaint, County Defendants admit and affirmatively state that Nurse Bedia directed that Mr. Lemuel be placed into a safety smock. County Defendants otherwise deny the allegations in paragraph 77 of the Complaint and, therefore, deny the same.

78.     County Defendants deny the underlying premise of and the allegations in paragraph 78 of the Complaint.

79.     As to paragraph 79 of the Complaint, County Defendants admit and affirmatively state that Deputies LeBaron and Stubbs transported Lemuel to Cell 3, a holding cell inside CJC and walked him to the back of the cell.  County Defendants otherwise deny the allegations in paragraph 79 of the Complaint.

80.     As to paragraph 80 of the Complaint, County Defendants deny that CJC staff had definitively determined Lemuel to be unarmed and otherwise deny the allegations in paragraph 80 of the Complaint.

81.     As to paragraph 81 of the Complaint, County Defendants admit and affirmatively state that Deputy LeBaron stated in his report that:

> Deputy Stubbs and I got him through the pre-admit doors into the main intake area when the inmate started tensing up his arms and trying to lock

out his legs.  The inmate continued to try and wiggle out of our control by trying to turn and by trying to drop his body weight towards the floor.  Inside Cell 3 we took the inmate to the back of the cell.  Mr. Lemuel continued to flex his arms and turn towards us.  There was a vacant look in his eyes as we were trying to give him commands to lower himself to his knees.  Mr. Lemuel started dropping to his knees.  I don't know if he was dropping towards the floor following our orders or dropping his weight like he had been doing during our escort to the cell.  Mr. Lemuel again tried to turn towards us and at that point I rolled him to the ground as he was already halfway down on his knees.  As Mr. Lemuel was going to the ground he spit and I felt some liquid go into my eye.  I gave a loud verbal command to not spit at me as I placed my open hand across his face turning it towards the wall and holding it there.  I called for a spit hood.

County Defendants deny the underlying premise of and the allegations in paragraph 81 of the Complaint.

82.     As to paragraph 82 of the Complaint, County Defendants deny the underlying premise that Lemuel did not receive different treatment based on his presentation and deny the allegations in paragraph 82 of the Complaint.

83.     As to paragraph 83 of the Complaint, County Defendants admit and affirmatively state that each individual County Defendant had, prior to Lemuel, been involved with detainees and inmates at CJC who were suspected of being impaired by drugs or alcohol.  The amount of experience in dealing with such individuals is different from defendant to defendant.  County Defendants further admit and affirmatively state that, subject to institutional and personal security, detainees and inmates suspected of drug or alcohol intoxication are subject to treatment consistent with their circumstances.  County Defendants otherwise deny the allegations in paragraph 83 of the Complaint.

84.     As to paragraph 84 of the Complaint, County Defendants admit and

affirmatively state that Cell 3 is typically used and designed for a single-person holding cell and that CJC is a secure facility.  County Defendants further admit that Lemuel was escorted into Cell 3 at approximately 03:57:02 hours.  At the time that he was escorted into the cell, his wrists were hand-cuffed in front of him.  County Defendants otherwise deny the allegations in paragraph 84 of the Complaint.

85.    As to paragraph 85 of the Complaint, County Defendants admit and affirmatively state that Cell 3 can be locked and that when Lemuel was brought into the cell there were no other offenders in the cell.  County Defendants further admit that Cell 3 is a "dry" cell that contains no toilet, sink, or bench and that there is a camera, without sound, mounted in one corner of Cell 3 and that the video of such camera is, among many other cameras, available for monitoring within CJC.  County Defendants otherwise deny the allegations in paragraph 85 of the Complaint.

86.    As to paragraph 86 of the Complaint, County Defendants admit and affirmatively state that a person in Cell 3 can be observed on video surveillance.  County Defendants otherwise deny the underlying premise of and the allegations in paragraph 86 of the Complaint.

87.    As to paragraph 87 of the Complaint, County Defendants admit that CJC has a medical unit.  County Defendants otherwise deny the underlying premise of and the allegations in paragraph 87 of the Complaint.

88.    As to paragraph 88 of the Complaint, County Defendants affirmatively state that Lemuel had just been released from Memorial Hospital Central.  County Defendants

otherwise deny the underlying premise of and the allegations in paragraph 88 of the Complaint.

89.     As to paragraph 89 of the Complaint, County Defendants admit and affirmatively state that upon entering Cell 3, attempts were made to replace Lemuel's clothing with a safety smock and to remove his restraints.  County Defendants otherwise deny the allegations in paragraph 89 of the Complaint.

90.     As to paragraph 90 of the Complaint, County Defendants admit and affirmatively state that upon entering Cell 3, attempts were made to replace Lemuel's clothing with a safety smock and to remove his restraints.  County Defendants otherwise deny the allegations in paragraph 90 of the Complaint.

91.     As to paragraph 91 of the Complaint, County Defendants admit and affirmatively state that Deputies LeBaron and Stubbs ordered Lemuel to lower himself to his knees.  County Defendants otherwise deny the allegations in paragraph 91 of the Complaint.

92.     As to paragraph 92 of the Complaint, County Defendants admit that Lemuel presented with evidence of impairment and affirmatively state that he had just been medically cleared by Memorial Hospital Central.  County Defendants otherwise deny the underlying premise of and the allegations in paragraph 92 of the Complaint.

93.     County Defendants deny the underlying premise of and the allegations in paragraph 93 of the Complaint.

94.     County Defendants deny the underlying premise of and the allegations in

paragraph 94 of the Complaint.

95.     As to paragraph 95 of the Complaint, County Defendants admit that there is a surveillance video of Lemuel while at CJC and that Plaintiffs have a copy of the video and reference the video in the Complaint.  County Defendants otherwise deny the underlying premise of and the allegations in paragraph 95 of the Complaint.

96.     County Defendants deny the underlying premise of and the allegations in paragraph 96 of the Complaint.

97.     County Defendants deny the underlying premise of and the allegations in paragraph 97 of the Complaint.

98.     As to paragraph 98 of the Complaint, County Defendants admit that at 04:00 hours, Deputy Burgess came to the door of Cell 3 with restraints and provided a spit hood to officers in the cell.  County Defendants otherwise deny the allegations in paragraph 98 of the Complaint.

99.     As to paragraph 99 of the Complaint, County Defendants admit and affirmatively state that Deputy LeBaron states, in part, in his report:

> Mr. Lemuel had been handcuffed to the front, so when we attempted to place him in a prone position on his stomach, the inmate tucked his arms into his chest.  Mr. Lemuel was given loud verbal commands to extend his arms above his head.  I was trying to get his arms above his head so we could place him into our handcuffs and place the handcuffs behind his back.  I already had placed my right elbow into his shoulder blade and back area because the inmate had attempted to push himself up off the floor.  I had to readjust my elbow a few times because of the inmate rolling back and forth on the floor.  Sgt. Miller said something about the inmate biting her.  I delivered two knee strikes to the inmate's right oblique area.  I saw Deputy Burgess, Brandon #13104 enter the cell and try to help me extend Mr. Lemuel's arms above his head.  I delivered a couple elbow strikes to the

shoulder area.  Mr. Lemuel was able to tuck his arms back into his chest preventing us from extending them above his head.

County Defendants otherwise deny the underlying premise of and the allegations in paragraph 99 of the Complaint.

100.   As to paragraph 100 of the Complaint, County Defendants admit and affirmatively state that Deputy Stubbs stated, in part, in her report:

Deputy Bell and I wrestled with Mr. Lemuel to keep his legs crossed, folded into his buttocks.  Sgt. Miller gave Mr. Lemuel multiple verbal orders to give us his hands and to stop trying to bite her.  Mr. Lemuel attempted multiple times to lift himself off of the ground and not place his hands above his head as staff ordered him.  I delivered approximately two palm heel strikes to the right thigh of Mr. Lemuel as he attempted to kick staff and resist our efforts to control him.

County Defendants otherwise deny the underlying premise of and the allegations in paragraph 100 of the Complaint.

101.   County Defendants deny the underlying premise of and the allegations in paragraph 101 of the Complaint.

102.   As to paragraph 102 of the Complaint, County Defendants admit and affirmatively state that Deputy LeBaron states, in part, in his report:

Mr. Lemuel had been handcuffed to the front, so when we attempted to place him in a prone position on his stomach, the inmate tucked his arms into his chest.  Mr. Lemuel was given loud verbal commands to extend his arms above his head.  I was trying to get his arms above his head so we could place him into our handcuffs and place the handcuffs behind his back.  I already had placed my right elbow into his shoulder blade and back area because the inmate had attempted to push himself up off the floor.  I had to readjust my elbow a few times because of the inmate rolling back and forth on the floor.  Sgt. Miller said something about the inmate biting her.  I delivered two knee strikes to the inmate's right oblique area. I saw Deputy Burgess, Brandon #13104 enter the cell and try to help me extend Mr.

26

> Lemuel's arms above his head.  I delivered a couple elbow strikes to the shoulder area.  Mr. Lemuel was able to tuck his arms back into his chest preventing us from extending them above his head.

County Defendants otherwise deny the underlying premise of and the allegations in paragraph 102 of the Complaint.

103.   County Defendants deny the underlying premise of and the allegations in paragraph 103 of the Complaint.

104.   As to paragraph 104 of the Complaint, County Defendants deny that any of their conduct restricted the ability of Lemuel to breathe and otherwise deny the underlying premise of and the allegations in paragraph 104 of the Complaint.

105.   County Defendants deny the underlying premise of and the allegations in paragraph105 of the Complaint.

106.   County Defendants deny the underlying premise of and the allegations in paragraph 106 of the Complaint.

107.   As to paragraph 107 of the Complaint, County Defendants admit that Deputy Burgess stated in a report in part as follows:

> Due to Mr. Lemuel having spit on Deputy LeBaron, Sgt. Miller and I attempted to place a spit hood over Mr. Lemuel's face.  Mr. Lemuel attempted to bite Sgt. Miller's right hand.  Sgt. Miller instructed Mr. Lemuel to stop trying to bite.  I took control of Mr. Lemuel's head, I applied a hypoglossal pressure point control technique to the right side jaw line of Mr. Lemuel's head.  Mr. Lemuel stopped trying to bite at deputies and I was able to apply a spit hood.

County Defendants otherwise deny the remaining allegations in paragraph 107 of the Complaint.

108.    As to paragraph 108 of the Complaint, County Defendants admit that Deputy

Burgess stated in a report in part as follows:

> Due to Mr. Lemuel having spit on Deputy LeBaron, Sgt. Miller and I
> attempted to place a spit hood over Mr. Lemuel's face.  Mr. Lemuel
> attempted to bite Sgt. Miller's right hand.  Sgt. Miller instructed Mr. Lemuel
> to stop trying to bite.  I took control of Mr. Lemuel's head, I applied a
> hypoglossal pressure point control technique to the right side jaw line of Mr.
> Lemuel's head.  Mr. Lemuel stopped trying to bite at deputies and I was able
> to apply a spit hood.

County Defendants otherwise deny the remaining allegations in paragraph 108 of the

Complaint.

109.    As to paragraph 109 of the Complaint, County Defendants admit that Deputy

Burgess stated in a report in part as follows:

> Due to Mr. Lemuel having spit on Deputy LeBaron, Sgt. Miller and I
> attempted to place a spit hood over Mr. Lemuel's face.  Mr. Lemuel
> attempted to bite Sgt. Miller's right hand.  Sgt. Miller instructed Mr. Lemuel
> to stop trying to bite.  I took control of Mr. Lemuel's head, I applied a
> hypoglossal pressure point control technique to the right side jaw line of Mr.
> Lemuel's head.  Mr. Lemuel stopped trying to bite at deputies and I was able
> to apply a spit hood.

County Defendants otherwise deny the remaining allegations in paragraph 109 of the

Complaint.

110.    As to paragraph 110 of the Complaint, County Defendants admit and

affirmatively state that Sergeant Miller states in her report, in part, as follows:

> Mr. Lemuel continued to resist and would not follow orders to move his
> hands from under him and put them above his head.  Mr. Lemuel continued
> to spit and move his head from side to side while doing so.  Deputy LeBaron
> and I attempted to gain control of Mr. Lemuel's arms to move them above his
> head while avoiding his attempts to spit on us.  Mr. Lemuel continued to
> resist our efforts.  During this time Deputy Stubbs and Deputy Bell were

attempting to maintain control of Mr. Lemuel's legs.  Deputy Burgess #13104 responded to the cell with a spit hood to place on Mr. Lemuel to keep him from spitting on staff.  Deputy LeBaron, Deputy Burgess and I were able to get Mr. Lemuel's arms above his head and secure them while we attempted to put the spit hood on him.  Mr. Lemuel continued to move his head from side to side while trying to get his arms back under his body, making it difficult to get the spit hood covering his face completely.  To prevent Mr. Lemuel from being able to move his arms back under his body, I placed my left hand and the shin of my right leg on Mr. Lemuel's right arm applying pressure and securing it between my shin and the floor.  Mr. Lemuel turned his head toward my hand and I felt Mr. Lemuel attempting to bite my hand.  While yelling for Mr. Lemuel to stop trying to bite me, I delivered an elbow strike to the back of Mr. Lemuel's right shoulder which resulted in him removing his mouth from my hand.

County Defendants otherwise deny the underlying premise of and the allegations in paragraph 110 of the Complaint.

111.  County Defendants deny the underlying premise of and the allegations in paragraph 111 of the Complaint.

112.  County Defendants deny the underlying premise of and the allegations in paragraph 112 of the Complaint.

113.  County Defendants deny the underlying premise of and the allegations in paragraph 113 of the Complaint.

114.  County Defendants deny the underlying premise of and the allegations in paragraph 114 of the Complaint.

115.  County Defendants deny the underlying premise of and the allegations in paragraph 115 of the Complaint.

116.  County Defendants deny the underlying premise of and the allegations in paragraph 116 of the Complaint.

117.   County Defendants deny the underlying premise of and the allegations in paragraph 117 of the Complaint.

118.   As to paragraph 118 of the Complaint, County Defendants admit that on August 14, 2018, Lemuel died. County Defendants otherwise deny the remaining allegations in paragraph 118 of the Complaint.

119.   As to paragraph 119 of the Complaint, County Defendants admit and affirmatively state that Deputy Brienza entered Cell 3 at or about 04:01:39 hours, that Deputy Young entered Cell 3 at or about 04:02:40 hours, and Deputy Thorpe entered Cell 3 at or about 04:03:27 hours. County Defendants otherwise deny the remaining allegations in paragraph 119 of the Complaint.

120.   As to paragraph 120 of the Complaint, County Defendants admit and affirmatively state that Deputy Young placed leg restraints on Lemuel's legs and also relieved Deputy Stubbs and that Deputy Brienza relieved Deputy Bell. County Defendants otherwise deny the remaining allegations in paragraph 120 of the Complaint.

121.   As to paragraph 121 of the Complaint, County Defendants admit and affirmatively state that Deputy Young placed leg restraints on Lemuel's ankles. County Defendants otherwise deny the remaining allegations in paragraph 121 of the Complaint.

122.   As to paragraph 122 of the Complaint, County Defendants admit and affirmatively state that Deputy Thorpe used the cut down knife to assist in removing Lemuel's shirt and shorts. County Defendants otherwise deny the remaining allegations in paragraph 122 of the Complaint.

123.   As to paragraph 123 of the Complaint, County Defendants admit and affirmatively state that at or about the time that Lemuel was rolled onto his right side it appeared to one or more of the persons on scene that Lemuel was not responding at which point Nurse Bedia instructed that a sternum rub be applied to Lemuel.   County Defendants further admit and affirmatively state that Deputy LeBaron stated, in part, in his report:

> The clothes were successfully removed from Mr. Lemuel.  A safety smock was brought into the cell.  I told the deputies in the cell that we needed to rotate him towards the camera.  We picked up Mr. Lemuel and rotated him. Mr. Lemuel was still tense.  I called for medical and a camera to check and document the restraints.  Pictures were taken of the restraints after Nurse Bedia #17091.

> We started to place Mr. Lemuel into the recovery position because of the aggressiveness and duration of resistance.  Deputy Burgess and I rolled Mr. Lemuel towards me so he was facing Deputy Burgess.  Mr. Lemuel had stopped tensing and showed signs of being unconscious.  Mr. Lemuel's limbs were limp and his breathing was really shallow.  Deputy Burgess asked, "Is he unconscious".  I looked for the rise and fall of Mr. Lemuel's chest and couldn't see it.  I felt for a pulse and felt a weak one but I said "Considering how hard he has fought us his pulse should be racing".  Nurse Bedia made a knuckle motion which I understood as needing a sternum rub. I placed my knuckles against the middle of Mr. Lemuel's chest and began to vigorously rub my knuckles up and down against Lemuel's chest.  I have done this before on other unconscious inmates and knew what response it generally has.  I didn't see any movement from Mr. Lemuel.  Deputy Burgess was in a slightly better position to administer a sternum rub so he started rubbing Mr. Lemuel's chest.  We still noticed no response.  I heard at one point the Charge Nurse Bauer, Robin say shout out of the cell to call AMR (American Medical Response).  Nurse Bauer said she needed the restraints removed and Mr. Lemuel rolled onto his back.  Nurse Bauer started doing chest compressions and asked for some other medical supplies to assist with breathing and checking vitals.  I remained where I was in case Mr. Lemuel gained consciousness.  I watched as the nurses administered CPR and checked for vitals.  At some point the AED was called for and placed on Mr. Lemuel as well as a plastic device which looked to be used to try and move

the tongue out of the airway.  CPR was continued until after AMR arrived.
Nurse Bedia relieved Nurse Bauer and then was relieved by AMR personnel.

County Defendants otherwise deny the remaining allegations in paragraph 123 of the

Complaint.

124.   County Defendants deny the underlying premise of and the allegations in

paragraph 124 of the Complaint.

125.   County Defendants deny the underlying premise of and the allegations in

paragraph 125 of the Complaint.

126.   County Defendants deny the underlying premise of and the allegations in

paragraph 126 of the Complaint.

127.   County Defendants deny the underlying premise of and the allegations in

paragraph 127 of the Complaint.

129.[2]   County Defendants deny the underlying premise of and the allegations in

paragraph 129 of the Complaint.

128.   County Defendants deny the underlying premise of and the allegations in

paragraph 128 of the Complaint.

129.   As to paragraph 129 of the Complaint, on information and belief, County

Defendants admit that Nurse Bedia was, during most of the contact by deputies with

Lemuel, just outside of or inside Cell 3 and, on information and belief, was in a position to

observe most of the contact between the deputies and Lemuel.  Otherwise, County

---

[2] Plaintiffs have misnumbered the paragraphs beginning here.  County Defendants use the misnumbered paragraphs as they appear in the Complaint.

Defendants deny any inference or allegations in paragraph 129 of the use of inappropriate force and deny the remaining allegations of paragraph 129.

130.    As to paragraph 130 of the Complaint, the allegations are directed to a defendant other than County Defendants and, therefore, County Defendants need not admit or deny the allegations.  To the extent County Defendants are required to admit or deny the allegations in paragraph 130 of the Complaint, County Defendants deny that Lemuel was in extreme medical danger due to the use of force and deny that Nurse Bedia failed to take any medical action or provide medical assistance.  County Defendants are otherwise without sufficient knowledge as to the allegations in paragraph 130 of the Complaint and, therefore, deny the same.

131.    As to paragraph 131 of the Complaint, County Defendants admit and affirmatively state that at or about 04:08:56 hours, Nurse Bedia began checking Lemuel's vital signs.  County Defendants otherwise deny the remaining allegations in paragraph 131 of the Complaint.

132.    County Defendants deny the underlying premise of and the allegations in paragraph 132 of the Complaint.

133.    As to paragraph 133 of the Complaint, County Defendants admit and affirmatively state that at or about 04:09 hours, Lemuel was turned onto his side into a recovery position.   County Defendants otherwise deny the remaining allegations in paragraph 133 of the Complaint.

134.    As to paragraph 134 of the Complaint, County Defendants admit and

affirmatively state that after Lemuel was rolled onto his side, Nurse Bedia ordered sternum rubs which were administered while Nurse Bedia continued to assess Lemuel.  County Defendants otherwise deny the remaining allegations in paragraph 134 of the Complaint.

135.   As to paragraph 135 of the Complaint, County Defendants admit and affirmatively state that after Lemuel was rolled onto his side, Nurse Bedia ordered sternum rubs which were administered while Nurse Bedia continued to assess Lemuel.  County Defendants otherwise deny the remaining allegations in paragraph 135 of the Complaint.

136.   As to paragraph 136 of the Complaint, County Defendants admit and affirmatively state that after Lemuel was rolled onto his side, Nurse Bedia ordered sternum rubs which were administered while Nurse Bedia continued to assess Lemuel.  County Defendants otherwise deny the remaining allegations in paragraph 136 of the Complaint.

137.   As to paragraph 137 of the Complaint, County Defendants admit and affirmatively state that Deputies LeBaron and Burgess, based on orders from Nurse Bedia, both administered sternum rubs.   County Defendants otherwise deny the remaining allegations in paragraph 137 of the Complaint.

138.   As to paragraph 138 of the Complaint, County Defendants admit and affirmatively state that Nurse Bedia ordered a sternum rub for Lemuel.  County Defendants otherwise deny the remaining allegations in paragraph 138 of the Complaint.

139.   As to paragraph 139 of the Complaint, County Defendants admit and affirmatively state that Sergeant Wright stated in his report, in part, as follows:

> By this time the deputies within the cell had Mr. Lemuel restrained and was positioning him inside the cell for a safe exit.  This is when deputies realized

> he was having a medical emergency of some kind of was possibly not breathing.  Medical Staff Member Robin Bauer (C17187) was inside the cell because of checking the restraints.
>
> I noticed a deputy doing a sternum rub which let me know there was a problem.  I came closer and Mr. Lemuel was in the recovery position on his right side and I could see his muscles twitching over his pectoral muscles.  MSM Bauer instructed the deputies within the cell to uncuff Mr. Lemuel and lay him flat on his back, which they did.  MSM Bauer also called for someone to call American Medical Response (AMR) and MSM Meghan Allington (C17188) made the call.

County Defendants further admit that the "twitching" observed by Sergeant Wright was observed by one or more other persons on scene.  County Defendants otherwise deny the remaining allegations in paragraph 139 of the Complaint.

140.    County Defendants deny the underlying premise of and the allegations in paragraph 140 of the Complaint.

141.    As to paragraph 141 of the Complaint, County Defendants admit that Nurse Bauer entered Cell 3 at or about 04:08:53 hours though affirmatively state that she was outside of Cell 3 prior to that time.  County Defendants deny that Nurse Bauer did not take action in response to her observations and assessment of Lemuel and are otherwise without sufficient knowledge as to the remaining allegations in paragraph 141 of the Complaint and, therefore, deny the same.

142.    As to paragraph 142 of the Complaint, County Defendants admit that by about 04:10:50 hours, leg and wrist restraints had been removed and at or about 04:11:26, Lemuel was rolled onto his back.  County Defendants otherwise deny the remaining allegations in paragraph 142 of the Complaint.

143.   As to paragraph 143 of the Complaint, County Defendants admit that at or about 04:11:36 hours, Nurse Bauer started chest compressions (CPR) on Lemuel.  County Defendants otherwise deny the remaining allegations in paragraph 143 of the Complaint.

144.   County Defendants deny the underlying premise of and the allegations in paragraph 144 of the Complaint.

145.   County Defendants deny the underlying premise of and the allegations in paragraph 145 of the Complaint.

146.   As to paragraph 146 of the Complaint, County Defendants admit and affirmatively state that outside medical assistance was called at or about 04:11:28 hours. County Defendants otherwise deny the allegations in paragraph 146 of the Complaint.

147.   As to paragraph 147 of the Complaint, County Defendants admit and affirmatively state that at or about 04:12:00 hours, Deputy Brienza, after having been handed an oxygen mask by Nurse Bedia, placed the oxygen mask on Lemuel in an attempt to assist Lemuel with breathing.  County Defendants otherwise deny the remaining allegations in paragraph 147 of the Complaint.

148.   As to paragraph 148 of the Complaint, County Defendants admit that at or about 04:14:08 hours, Deputy Stubbs brought an AED (automated external defibrillator) to Cell 3 and handed it to Sergeant Miller who then handed it to Nurse Bauer.  County Defendants further admit that no shock was delivered and affirmatively state that the AED stated not to initiate a shock.  County Defendants otherwise deny the remaining allegations in paragraph 148 of the Complaint.

149.   As to paragraph 149 of the Complaint, County Defendants admit and affirmatively state that at or about 04:21:34 hours, the Colorado Springs Fire Department arrived in the Sally Port of CJC and entered Cell 3 at or about 04:22:49 hours.  County Defendants further admit that at or about 04:24:24 hours, the Colorado Springs Fire Department took over chest compressions.  County Defendants are otherwise without sufficient knowledge as to the remaining allegations in paragraph 149 of the Complaint and, therefore, deny the same.

150.   As to paragraph 150 of the Complaint, County Defendants admit and affirmatively state that at or about 04:32:37 hours, Lemuel was placed on a gurney and taken out of Cell 3 and transported to the Sally Port where, at or about 04:35:00 hours, Lemuel was placed into an ambulance and at or about 04:39:36 hours, the ambulance left the Sally Port area of CJC.  County Defendants otherwise deny the remaining allegations in paragraph 150 of the Complaint.

151.   As to paragraph 151 of the Complaint, County Defendants admit and affirmatively state that at or about 04:32:37 hours, Lemuel was placed on a gurney and taken out of Cell 3 and transported to the Sally Port where, at or about 04:35:00 hours, Lemuel was placed into an ambulance and at or about 04:39:36 hours, the ambulance left the Sally Port area of CJC.  County Defendants otherwise deny the remaining allegations in paragraph 151 of the Complaint.

152.   As to paragraph 152 of the Complaint, County Defendants, on information and belief, admit that Lemuel never regained consciousness before dying on August 14,

2018.

153.   County Defendants deny the underlying premise of and the allegations in paragraph 153 of the Complaint.

154.   County Defendants deny the underlying premise of and the allegations in paragraph 154 of the Complaint.

155.   As to paragraph 155 of the Complaint, County Defendants admit and affirmatively state that the surveillance video for Cell 3 records when various persons, including the individual County Defendants, entered the cell.  County Defendants deny excessive force was used and deny that Deputy Thorpe or any County Defendant observed the use of excessive force.  County Defendants otherwise deny the underlying premise and the allegations in paragraph 155 of the Complaint.

156.   As to paragraph 156 of the Complaint, County Defendants admit and affirmatively state that the surveillance video for Cell 3 records when various persons, including the individual County Defendants, entered the cell.  County Defendants deny excessive force was used and deny that Deputy Rodriguez or any County Defendants observed the use of excessive force.  County Defendant otherwise deny the underlying premise and the allegations in paragraph 156 of the Complaint.

157.   As to paragraph 157 of the Complaint, County Defendants admit and affirmatively state that Sergeant Rodriguez's report states, in part, as follows:

> At approximately 0405 hours, Sergeant Kim Miller called me on my radio asking me if I could respond to Intake and Release.  While I was responding from Fox Mod, I entered the main hallway when I heard her call for additional deputies to respond to Intake.  I echoed her request over the radio to all

38

responding wards.  I made entry into Intake and could hear yelling coming from the amphitheater.  I responded to Cell #3 where I observed several deputies along with Sergeant Miller struggling with an individual later identified as Deramus Lemuel #A00185982.  I instructed Deputies Chadwick Young #17098, and Kevin Thorpe #13113 to assist with placing Inmate Lemuel into restraints.  Inmate Lemuel was actively resisting staff's efforts and at one point attempted to bite Sgt. Miller.  Intake Deputies removed the restraints belonging to Parole and placed our restraints on Inmate Lemuel.  During the incident I was handed handcuffs, handcuff keys and the cut down knife which I gave to Deputy Thorpe to cut Lemuel's clothing off with.  Once in restraints Lemuel was rotated counter clockwise to prepare for staff to exit the cell.  Once this was done, we were about to place Lemuel into the Recovery Position when we noticed his eyes had rolled back and, he didn't appear to be breathing.  Intake Deputies began to apply sternum rubs with no effect.  Sgt. Miller called for AMR to be activated RN Robin Bauer requested we remove his Step I Restraints and place him onto his back.  Medical Staff began life saving measures with Deputy John Brienza #17103.  I exited the cell to begin logging times and, personnel on scene.  I later gave the list of times and, personnel on scene to Sgt. Miller at her request.

County Defendants otherwise deny the remaining allegations in paragraph 139 of the Complaint.

158.   As to paragraph 158 of the Complaint, County Defendants admit and affirmatively state that the surveillance video for Cell 3 records when various persons, including the individual County Defendants, entered the cell.  County Defendants deny excessive force was used and deny that Sergeant Wright or any County Defendant observed the use of excessive force.  County Defendant otherwise deny the underlying premise and the allegations in paragraph 158 of the Complaint.

159.   County Defendants deny the underlying premise of and the allegations in paragraph 159 of the Complaint.

160.   County Defendants deny the underlying premise of and the allegations in

paragraph 160 of the Complaint.

161.   As to paragraph 161 of the Complaint, the allegations are directed to a defendant other than County Defendants and, therefore, County Defendants need not admit or deny the allegations.  To the extent County Defendants are required to admit or deny the allegations in paragraph 161 of the Complaint, County Defendants deny the same.

162.   As to paragraph 162 of the Complaint, County Defendants admit and affirmatively state that upon Lemuel's arrival back at Memorial Hospital Central on August 1, 2018, the impression of Mario Fadila, M.D., was that Lemuel had suffered a cardiac arrest likely due to an overdose of methamphetamine ingestion.  County Defendants admit and affirmatively state that the medical records from UCHealth also observe as part of the initial assessment that Lemuel presented with a serious condition.  County Defendants otherwise state that the medical records of UCHealth speak for themselves and that County Defendants are otherwise without knowledge regarding the remaining allegations and, therefore, deny the allegations of paragraph 162 of the Complaint.

163.   County Defendants deny the underlying premise of and the allegations in paragraph 163 of the Complaint.

164.   As to paragraph 164 of the Complaint, County Defendants admit and affirmatively state that lactic acidosis is a form of metabolic acidosis that begins when a person overproduces or underutilizes lactic acid, and their body is not able to adjust to these changes.  County Defendants otherwise deny the allegations in paragraph 164 of

the Complaint.

165.    County Defendants deny the underlying premise of and the allegations in paragraph 165 of the Complaint.

166.    County Defendants deny the underlying premise of and the allegations in paragraph 166 of the Complaint.

167.    As to paragraph 167 of the Complaint, County Defendants, on information and belief, admit that Lemuel remained on a ventilator after returning to Memorial Hospital Central on August 1, 2018, did not regain consciousness, and died on August 14, 2018. County Defendants are otherwise without knowledge regarding the allegations in paragraph 167 and, therefore, deny the same.

168.    As to paragraph 168 of the Complaint, County Defendants admit that Lemuel died on August 14, 2018.  County Defendants further admit and affirmatively state that the Coroner's Report states, in part:

> Based on the case history and autopsy findings, is our opinion that Deramus Lemuel, a 38-year-old Black male, died as a result of complications of global hypoxic/ischemic brain injury due to cardiac arrest occurring in the setting of illicit drug intoxication and physical restraint by law enforcement.  It is also our opinion that hypertensive cardiovascular disease contributed to the cause of death.

> The ruling of homicide in this case is a medical diagnosis and does not imply intent or wrongdoing by law enforcement officers.  The ruling of homicide as the manner of death is in accordance with the guidelines of the National Association of Medical Examiners regarding deaths occurring during a physical struggle with law enforcement officers.

County Defendants otherwise state that the Coroner's Report and autopsy findings speak for themselves and otherwise deny the allegations in paragraph 168 of the Complaint.

169.   As to paragraph 169 of the Complaint, County Defendants admit that Lemuel

died on August 14, 2018.  County Defendants further admit and affirmatively state that the

Coroner's Report states, in part:

> Based on the case history and autopsy findings, is our opinion that Deramus
> Lemuel, a 38-year-old Black male, died as a result of complications of global
> hypoxic/ischemic brain injury due to cardiac arrest occurring in the setting of
> illicit drug intoxication and physical restraint by law enforcement.  It is also
> our opinion that hypertensive cardiovascular disease contributed to the
> cause of death.
>
> The ruling of homicide in this case is a medical diagnosis and does not imply
> intent or wrongdoing by law enforcement officers.  The ruling of homicide as
> the manner of death is in accordance with the guidelines of the National
> Association of Medical Examiners regarding deaths occurring during a
> physical struggle with law enforcement officers.

County Defendants otherwise state that the Coroner's Report and autopsy findings speak

for themselves and otherwise deny the allegations in paragraph 169 of the Complaint.

170.   County Defendants deny the underlying premise of and the allegations in

paragraph 170 of the Complaint.

171.   As to paragraph 171 of the Complaint, County Defendants deny that the

Coroner's Report or autopsy findings found any evidence of blunt force trauma.  County

Defendants affirmatively state that, under a section titled "Evidence of Injury," the autopsy

report states as follows:

> A ½ inch, scabbed area is on the right ear.  Multiple irregular and linear
> scabbed areas, measuring up to ¾ inch, are on the lateral right leg.  A ¼
> inch, V-shaped scabbed area is on the lateral right ankle.
>
> A layer-by-layer dissection of the anterior strap muscles of the neck reveals
> no evidence of intramuscular hemorrhage.  The hyoid bone and laryngeal
> cartilages are intact.

> A 3 x 1 ¾ inch area of contusion involves the intercostal muscles of the posterolateral right 10th through 12th ribs. A subsequent dissection of the posterior neck, back, and buttocks reveals a 2 ½ x 1 ¾ inch area of contusion involving the musculature of the right lower back, overlying the previously described contusion of the posterolateral right intercostal muscles.
>
> Lateral and medial incisions are made along the wrists and ankles and reveal no evidence of subcutaneous hemorrhage. The testicles are removed and sectioned and reveal no evidence of contusion or other injury.

County Defendants otherwise state that the Coroner's Report and autopsy findings speak for themselves and otherwise deny the allegations in paragraph 171 of the Complaint.

172. County Defendants deny the underlying premise of and the allegations in paragraph 172 of the Complaint.

173. County Defendants deny the underlying premise of and the allegations in paragraph 173 of the Complaint.

174. County Defendants deny the underlying premise of and the allegations in paragraph 174 of the Complaint.

175. As to paragraph 175 of the Complaint, County Defendants admit that the El Paso County Sheriff's Office investigated the circumstances of the incident involving Lemuel and further admit that such investigation did not find misconduct on any of the individual County Defendants nor any other El Paso County Sheriff's Office employees and, accordingly, no discipline was administered to any El Paso County Sheriff's Office employee related to the incident involving Lemuel. County Defendants expressly deny that the County Defendants "killed" Lemuel and otherwise deny the underlying premise of and the allegations of paragraph 175 of the Complaint.

176.   As to paragraph 176 of the Complaint, County Defendants admit that no discipline was rendered to any County Defendant regarding the incident involving Lemuel. County Defendants deny that there was an unconstitutional delay in emergency medical treatment for Lemuel and otherwise deny the underlying premise of and the allegations in paragraph 176 of the Complaint as they relate to the County Defendants.   County Defendants are without sufficient knowledge regarding the allegations in paragraph 176 against the medical deficiencies and, therefore, deny the same.

177.   As to paragraph 177 of the Complaint, County Defendants admit that each of the individual County Defendants received training regarding the use of force and protocol for responding to detainees and inmates who are determined to be in need of medical care.  Each of the individual County Defendants affirmatively state that they acted objectively, reasonably and in good faith on the basis of their training and affirmatively state and deny that they did not violate any constitutional or other right of Lemuel.   County Defendants deny that El Paso County, through its Sheriff's Department, maintains an unconstitutional custom, practice or policy and that no such practice or policy resulted in injuries to or the death of Lemuel.   County Defendants otherwise deny the underlying premise of and the allegations in paragraph 177 of the Complaint.

178.   County Defendants deny the underlying premise of and the allegations in paragraph 178 of the Complaint.

179.   County Defendants deny the underlying premise of and the allegations in paragraph 179 of the Complaint.

180.    County Defendants deny the underlying premise of and the allegations in paragraph 180 of the Complaint.

181.    County Defendants deny the underlying premise of and the allegations in paragraph 181 of the Complaint.

182.    County Defendants deny the allegations in paragraph 182 of the Complaint.

183.    County Defendants deny the allegations in paragraph 183 of the Complaint.

184.    County Defendants deny the underlying premise of and the allegations in paragraph 184 of the Complaint.

185.    County Defendants deny the underlying premise of and the allegations in paragraph 185 of the Complaint.

186.    As to paragraph 186 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding CJC detainee Brock John Behler and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 186 of the Complaint.

187.    As to paragraph 187 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Rose Santisteven and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 187 of the Complaint.

188.    As to paragraph 188 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Christine Vargas and the litigation involved regarding the same and, therefore, deny the

allegations of paragraph 188 of the Complaint.

189.   As to paragraph 189 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding CJC detainee Robert Montoya and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 189 of the Complaint.

190.   As to paragraph 190 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding CJC detainee Philippa McCully and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 190 of the Complaint.

191.   County Defendants deny the underlying premise of and the allegations in paragraph 191 of the Complaint.

192.   County Defendants deny the underlying premise of and the allegations in paragraph 192 of the Complaint.

193.   County Defendants deny the underlying premise of and the allegations in paragraph 193 of the Complaint.

194.   County Defendants deny the underlying premise of and the allegations in paragraph 194 of the Complaint.

195.   As to paragraph 195 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Thomas Ryan Dole and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 195 of the Complaint.

196.    As to paragraph 196 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Eliezer Tirado-Ortiz and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 196 of the Complaint.

197.    As to paragraph 197 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Eliezer Tirado-Ortiz and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 197 of the Complaint.

198.    As to paragraph 198 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Eliezer Tirado-Ortiz and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 198 of the Complaint.

199.    As to paragraph 199 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Heshimo Carr and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 199 of the Complaint.

200.    County Defendants deny the underlying premise of and the allegations in paragraph 200 of the Complaint.

201.    As to paragraph 201 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Terry Wayne West and the litigation involved regarding the same and, therefore, deny the

allegations of paragraph 201 of the Complaint.

202.   County Defendants deny the underlying premise of and the allegations in paragraph 202 of the Complaint.

203.   County Defendants deny the underlying premise of and the allegations in paragraph 203 of the Complaint.

204.   County Defendants deny the underlying premise of and the allegations in paragraph 204 of the Complaint.

205.   County Defendants deny the underlying premise of and the allegations in paragraph 205 of the Complaint.

206.   County Defendants deny the underlying premise of and the allegations in paragraph 206 of the Complaint.

207.   County Defendants deny the underlying premise of and the allegations in paragraph 207 of the Complaint.

208.   County Defendants deny the underlying premise of and the allegations in paragraph 208 of the Complaint.

209.   County Defendants deny the underlying premise of and the allegations in paragraph 209 of the Complaint.

210.   County Defendants deny the underlying premise of and the allegations in paragraph 210 of the Complaint.

211.   County Defendants deny the underlying premise of and the allegations in paragraph 211 of the Complaint.

212.    County Defendants deny the underlying premise of and the allegations in paragraph 212 of the Complaint.

213.    County Defendants deny the underlying premise of and the allegations in paragraph 213 of the Complaint.

214.    County Defendants admit that at all times relevant to the claims set out in the Complaint, Armor Health was contracted to provided certain inmate medical services as set out in a Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc. County Defendants are otherwise without sufficient knowledge as to the remaining allegations in paragraph 214 of the Complaint and deny the same.

215.    As to paragraph 215 of the Complaint, County Defendants deny that El Paso County maintained constitutionally deficient policies and practices or neglected to adequately retain and supervise their employees with respect to the proper procedures for the evaluation and treatment of CJC detainees' and inmates' serious medical needs,  and otherwise deny the allegations in paragraph 215 of the Complaint.  County Defendants further deny that Armor Health maintained or that they had sufficient knowledge that Armor Health maintained constitutionally deficient policies and practices or neglected to adequately train or supervise their employees with respect to the proper procedures for the evaluation and treatment of CJC detainees' and inmates' serious medical needs. County Defendants are otherwise without sufficient knowledge as to the remaining allegations in paragraph 215 of the Complaint and deny the same.

216.    As to paragraph 216 of the Complaint, County Defendants deny the underlying premise of and the allegations in paragraph 216 and otherwise deny the allegations in paragraph 216 of the Complaint.

217.    As to paragraph 217 of the Complaint, County Defendants deny the underlying premise of and allegations in paragraph 217 and otherwise deny the allegations in paragraph 217 of the Complaint.

218.    As to paragraph 218 of the Complaint, County Defendants deny the underlying premise of and allegations in paragraph 218 and otherwise deny the allegations in paragraph 218 of the Complaint.

219.    As to paragraph 219 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Christopher Spencer and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 219 of the Complaint.

220.    As to paragraph 220 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Montoya and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 220 of the Complaint.

221.    As to paragraph 221 of the Complaint, County Defendants affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding McCully and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 221 of the Complaint.

222.    As to paragraph 222 of the Complaint, County Defendants admit that Armor Health began performing under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc. on or about June 15, 2017.  County Defendants deny that the compensation set out in the Services Contract provided for compensation of more than forty million dollars. County Defendants are otherwise without sufficient knowledge regarding the remaining allegations in paragraph 222 of the Complaint and deny the same.

223.    As to paragraph 223 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident and otherwise deny the allegations in paragraph 223 of the Complaint.

224.    County Defendants deny the underlying premise of and the allegations in paragraph 224 of the Complaint.

225.    As to paragraph 225 of the Complaint, County Defendants deny the underlying premise of and allegations in paragraph 225 and otherwise deny the allegations in paragraph 225 of the Complaint.

226.    As to paragraph 226 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs have mischaracterized and misstated the purported incident regarding Eliezer Tirado-Ortiz and the litigation involved regarding the same and, therefore, deny the allegations of paragraph 226 of the Complaint.

227.    As to paragraph 227 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident regarding Hemphill and otherwise deny the allegations in paragraph 227 of the Complaint.

228.    As to paragraph 228 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incidents and otherwise deny the allegations in paragraph 228 of the Complaint.

229.    County Defendants deny the underlying premise of and the allegations in paragraph 229 of the Complaint.

230.    As to paragraph 230 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident regarding Woodson and otherwise deny the allegations in paragraph 230 of the Complaint.

231.    County Defendants deny the underlying premise of and the allegations in paragraph 231 of the Complaint.

232.    County Defendants deny the underlying premise of and the allegations in paragraph 232 of the Complaint.

233.    As to paragraph 233 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident involving

West and otherwise deny the allegations in paragraph 233 of the Complaint.

234.   As to paragraph 234 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident involving Peck and otherwise deny the allegations in paragraph 234 of the Complaint.

235.   As to paragraph 235 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident involving Martinez and otherwise deny the allegations in paragraph 235 of the Complaint.

236.   As to paragraph 236 of the Complaint, County Defendants deny the underlying premise of and allegations and affirmatively state that Plaintiffs misstate and otherwise mischaracterize the facts and circumstances of the alleged incident and otherwise deny the allegations in paragraph 236 of the Complaint.

237.   County Defendants deny the underlying premise of and the allegations in paragraph 237 of the Complaint.

238.   County Defendants deny the underlying premise of and the allegations in paragraph 238 of the Complaint.

239.   County Defendants deny the underlying premise of and the allegations in paragraph 239 of the Complaint.

240.   As to paragraph 240 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not

admit or deny the allegation. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 240 of the Complaint.

241.   As to paragraph 241 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 241 of the Complaint.

242.   As to paragraph 242 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 242 of the Complaint.

243.   As to paragraph 243 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny

the allegations in paragraph 243 of the Complaint.

244.   As to paragraph 244 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 244 of the Complaint.

245.   As to paragraph 245 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 245 of the Complaint.

246.   As to paragraph 246 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 246 of the Complaint.

247.   As to paragraph 247 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not

admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 247 of the Complaint.

248.   As to paragraph 248 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 248 of the Complaint.

249.   As to paragraph 249 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 249 of the Complaint.

250.   As to paragraph 250 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny

the allegations in paragraph 250 of the Complaint.

251.   As to paragraph 251 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 251 of the Complaint.

252.   As to paragraph 252 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 252 of the Complaint.

253.   As to paragraph 253 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not admit or deny the allegations. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 253 of the Complaint.

254.   As to paragraph 254 of the Complaint, the allegations are directed to defendants other than County Defendants and, as such, County Defendants need not

admit or deny the allegation. To the extent that County Defendants are required to admit or deny the allegations, County Defendants deny the underlying premise of and the allegations and are otherwise without sufficient knowledge as to the allegations and deny the allegations in paragraph 254 of the Complaint.

255.    County Defendants deny the underlying premise of and the allegations in paragraph 255 of the Complaint.

256.    County Defendants deny the underlying premise of and the allegations in paragraph 256 of the Complaint.

257.    County Defendants deny the underlying premise of and the allegations in paragraph 257 of the Complaint.

258.    County Defendants deny the underlying premise of and the allegations in paragraph 258 of the Complaint.

259.    County Defendants deny the underlying premise of and the allegations in paragraph 259 of the Complaint.

260.    County Defendants deny the underlying premise of and the allegations in paragraph 260 of the Complaint.

261.    County Defendants deny the underlying premise of and the allegations in paragraph 261 of the Complaint.

262.    County Defendants deny the underlying premise of and the allegations in paragraph 262 of the Complaint.

263.    County Defendants deny the underlying premise of and the allegations in

paragraph 263 of the Complaint.

264.   County Defendants deny the underlying premise of and the allegations in paragraph 264 of the Complaint.

265.   County Defendants deny the underlying premise of and the allegations in paragraph 265 of the Complaint.

266.   County Defendants deny the underlying premise of and the allegations in paragraph 266 of the Complaint.

267.   County Defendants deny the underlying premise of and the allegations in paragraph 267 of the Complaint.

268.   County Defendants deny the underlying premise of and the allegations in paragraph 268 of the Complaint.

**V. CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**14th Amendment - Excessive Force**
**(By the Estate Against Defendants El Paso County, LeBaron, Stubbs, Bell, Burgess, Miller, Rodriguez, Brienza, Young, Wright, Thorpe, and Bedia)**

269.   County Defendants incorporate their answers to the preceding paragraphs of the Complaint as though fully set forth herein.

270.   As to paragraph 270 of the Complaint, County Defendants admit that all individual County Defendants were, at all relevant times, acting under the color of law. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 270 of the Complaint and, therefore, deny the same.

59

271.   As to paragraph 271 of the Complaint, County Defendants admit that all individual County Defendants were, at all relevant times, acting within the course and scope of their employment.  On information and belief, County Defendants admit that Defendant Bedia was acting within the course and scope of her employment with Armor. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 271 of the Complaint and, therefore, deny the same.

272.   As to paragraph 272 of the Complaint, the allegations state legal conclusions which County Defendants need not admit or deny.  To the extent that County Defendants are required to admit or deny the allegations, County Defendants state that Plaintiffs set out an incomplete and inaccurate statement of law to which County Defendants need not admit or deny.   To the extent County Defendants are required to admit or deny the allegations in paragraph 272, County Defendants affirmatively state that they have an obligation not to violate the constitutional rights of Lemuel.  County Defendants otherwise deny the allegations in paragraph 272 of the Complaint.

273.   County Defendants deny the underlying premise of and the allegations in paragraph 273 of the Complaint.

274.   County Defendants deny the underlying premise of and the allegations in paragraph 274 of the Complaint.

275.   County Defendants deny the underlying premise of and the allegations in paragraph 275 of the Complaint.

276.   County Defendants deny the underlying premise of and the allegations in

paragraph 276 of the Complaint.

277.   County Defendants deny the underlying premise of and the allegations in paragraph 277 of the Complaint.

278.   County Defendants deny the underlying premise of and the allegations in paragraph 278 of the Complaint.

279.   County Defendants deny the underlying premise of and the allegations in paragraph 279 of the Complaint.

280.   County Defendants deny the underlying premise of and the allegations in paragraph 280 of the Complaint.

281.   County Defendants deny the underlying premise of and the allegations in paragraph 281 of the Complaint.

282.   As to paragraph 282 of the Complaint, the allegations state legal conclusions which County Defendants need not admit or deny.  To the extent that County Defendants are required to admit or deny the allegations, County Defendants state that Plaintiffs set out an incomplete and inaccurate statement of law to which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations in paragraph 282, County Defendants affirmatively state that they have an obligation not to violate the constitutional rights of Lemuel.  County Defendants otherwise deny the allegations in paragraph 282 of the Complaint.

283.   County Defendants deny the underlying premise of and the allegations in paragraph 283 of the Complaint.

284.   As to paragraph 284 of the Complaint, County Defendants admit that Defendants Miller, Rodriguez and Wright were sergeants at all relevant times.   County Defendants otherwise deny the allegations in paragraph 284 of the Complaint.

285.   As to paragraph 285 of the Complaint, County Defendants admit that Defendant Miller was the sergeant on duty for CJC Intake and during a portion of the time that Lemuel was at CJC, she was the supervisor of the deputies who were engaged with Lemuel.   County Defendants further admit that Sergeant Rodriguez was a floor security deputy and that for a portion of the time in which deputies engaged Lemuel, he assumed supervision of the deputies engaged with Lemuel.   County Defendants otherwise deny the allegations in paragraph 285 of the Complaint.

286.   County Defendants deny the underlying premise of and the allegations in paragraph 286 of the Complaint.

287.   County Defendants deny the underlying premise of and the allegations in paragraph 287 of the Complaint.

288.   County Defendants deny the underlying premise of and the allegations in paragraph 288 of the Complaint.

289.   County Defendants deny the underlying premise of and the allegations in paragraph 289 of the Complaint.

290.   County Defendants deny the underlying premise of and the allegations in paragraph 290 of the Complaint.

291.   County Defendants deny the underlying premise of and the allegations in

paragraph 291 of the Complaint.

292.   County Defendants deny the underlying premise of and the allegations in paragraph 292 of the Complaint.

293.   County Defendants deny the underlying premise of and the allegations in paragraph 293 of the Complaint.

294.   County Defendants deny the underlying premise of and the allegations in paragraph 294 of the Complaint.

295.   County Defendants deny the underlying premise of and the allegations in paragraph 295 of the Complaint.

296.   County Defendants deny the underlying premise of and the allegations in paragraph 296 of the Complaint.

297.   County Defendants deny the underlying premise of and the allegations in paragraph 297 of the Complaint.

298.   County Defendants deny the underlying premise of and the allegations in paragraph 298 of the Complaint.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### 14th Amendment - Failure to Provide Adequate Medical Care and Treatment
### (By the Estate Against All Defendants)

299.   County Defendants incorporate their answers to the preceding paragraphs of the Complaint as though fully set forth herein.

300.   As to paragraph 300 of the Complaint, County Defendants admit and affirmatively state that all individual County Defendants were, at all relevant times, acting

under the color of law.  County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 300 of the Complaint and, therefore, deny the same.

301.   As to paragraph 301 of the Complaint, County Defendants admit that all individual County Defendants were, at all relevant times, acting within the course and scope of their employment.  On information and belief, County Defendants admit that Defendant Bedia was acting within the course and scope of her employment with Armor. County Defendants are without sufficient knowledge regarding the remaining allegations in paragraph 301 of the Complaint and, therefore, deny the same.

302.   As to paragraph 302 of the Complaint, County Defendants admit that Armor provided certain inmate medical services as set out in a Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 302 state legal conclusions which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny these allegations, County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 302 of the Complaint and, therefore, deny the same.

303.   As to paragraph 303 of the Complaint, County Defendants deny that Lemuel was a pretrial detainee but admit and affirmatively state that Lemuel was subject to the protections afforded by the Constitution of the United States.  County Defendants otherwise deny the allegations in paragraph 303 of the Complaint.

304.   As to paragraph 304 of the Complaint, the allegations state legal conclusions

which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants state that Plaintiffs stated an incomplete statement of the constitutional rights with regard to inmate's rights to receive medical care and, therefore, deny the same.

305.    As to paragraph 305 of the Complaint, the allegations state legal conclusions which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants state that Plaintiffs stated an incomplete and inaccurate statement of the constitutional rights with regard to inmate's rights to receive medical care and, therefore, deny the same.

306.    As to paragraph 306 of the Complaint, the allegations state legal conclusions which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants state that Plaintiffs stated an incomplete statement of the constitutional rights with regard to inmate's rights to receive medical care and, therefore, deny the same.

307.    County Defendants deny the underlying premise of and the allegations in paragraph 307 of the Complaint.

308.    County Defendants deny the underlying premise of and the allegations in paragraph 308 of the Complaint.

309.    County Defendants deny the underlying premise of and the allegations in paragraph 309 of the Complaint.

310.    County Defendants deny the underlying premise of and the allegations in

paragraph 310 of the Complaint.

311.    County Defendants deny the underlying premise of and the allegations in paragraph 311 of the Complaint.

312.    County Defendants deny the underlying premise of and the allegations in paragraph 312 of the Complaint.

313.    County Defendants deny the underlying premise of and the allegations in paragraph 313 of the Complaint.

314.    County Defendants deny the underlying premise of and the allegations in paragraph 314 of the Complaint.

315.    County Defendants deny the underlying premise of and the allegations in paragraph 315 of the Complaint.

316.    County Defendants deny the underlying premise of and the allegations in paragraph 316 of the Complaint.

317.    County Defendants deny the underlying premise of and the allegations in paragraph 317 of the Complaint.

318.    County Defendants deny the underlying premise of and the allegations in paragraph 318 of the Complaint.

319.    County Defendants deny the underlying premise of and the allegations in paragraph 319 of the Complaint.

320.    County Defendants deny the underlying premise of and the allegations in paragraph 320 of the Complaint.

321.    County Defendants deny the underlying premise of and the allegations in paragraph 321 of the Complaint.

322.    County Defendants deny the underlying premise of and the allegations in paragraph 322 of the Complaint.

323.    County Defendants deny the underlying premise of and the allegations in paragraph 323 of the Complaint.

324.    County Defendants deny the underlying premise of and the allegations in paragraph 324 of the Complaint.

325.    County Defendants deny the underlying premise of and the allegations in paragraph 325 of the Complaint.

326.    County Defendants deny the underlying premise of and the allegations in paragraph 326 of the Complaint.

327.    County Defendants deny the underlying premise of and the allegations in paragraph 327 of the Complaint.

328.    County Defendants deny the underlying premise of and the allegations in paragraph 328 of the Complaint.

329.    County Defendants deny the underlying premise of and the allegations in paragraph 329 of the Complaint.

330.    County Defendants deny the underlying premise of and the allegations in paragraph 330 of the Complaint.

331.    County Defendants deny the underlying premise of and the allegations in

paragraph 331 of the Complaint.

332.    County Defendants deny the underlying premise of and the allegations in paragraph 332 of the Complaint.

**THIRD CLAIM FOR RELIEF**
**Negligence Causing Wrongful Death**
**Colo. Rev. Stat. §§ 13-21-201 *et seq.***
**(By Elizabeth Lemuel, individually, Z.D-L.M.L., D.J.L., D.S.L., and Z.A.T.L. Against Defendants Armor, Bedia, and Bauer)**

333.    County Defendants incorporate their answers to the preceding paragraphs of the Complaint as though fully set forth herein.

334.    As to paragraph 334 of the Complaint, County Defendants admit that records of the Colorado Secretary of State record that Armor Correctional Health Services, Inc. d/b/a Armor Health is a privately owned Colorado corporation with its principal office located at 4960 SW 72nd Avenue, Suite 400, Miami, Florida 33155, and that its registered agent in Colorado is CT Corporation System located at 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112.  County Defendants further admit and affirmatively state that at all times relevant to the claims set out in the Complaint, Armor Health provided certain inmate medical services as set out in a services contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 334 state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 334 of the Complaint and, therefore, deny the

same.

335.    As to paragraph 335 of the Complaint, County Defendants, on information and belief, admit that Defendants Bedia and Bauer are private individuals employed by Armor.  County Defendants admit the records of the Colorado Secretary of State record that Armor Correctional Health Services, Inc. d/b/a Armor Health is a privately owned Colorado corporation with its principal office located at 4960 SW 72nd Avenue, Suite 400, Miami, FL 33155, and that its registered agent in Colorado is CT Corporation System located at 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112.   County Defendants further admit and affirmatively state that at all times relevant to the claims set out in the Complaint, Armor Health provided certain inmate medical services as set out in a services contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 335 state legal conclusions for which County Defendants need not admit or deny.   To the extent County Defendants are required to admit or deny the allegations, County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 335 of the Complaint and, therefore, deny the same.

336.    As to paragraph 336 of the Complaint, County Defendants admit that Lemuel was in custody and affirmatively state that while Lemuel had not yet been booked into CJC, CJC employees had taken physical control of Lemuel.  As to the remaining allegations in paragraph 336, these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or

deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc. County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 336 and, therefore, deny the same.

337.   As to paragraph 337 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 337 and, therefore, deny the same.

338.   As to paragraph 338 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El

Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 338 and, therefore, deny the same.

339.   As to paragraph 339 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 339 and, therefore, deny the same.

340.   As to paragraph 340 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 340 and, therefore, deny

the same.

341.   As to paragraph 341 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 341 and, therefore, deny the same.

342.   As to paragraph 342 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 342 and, therefore, deny the same.

343.   As to paragraph 343 of the Complaint, County Defendants state these allegations are directed to a defendant other than the County Defendants and state legal

conclusions for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants admit that Armor, and its employees, were obligated to provide medical services to inmates, including Lemuel, under the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  County Defendants are without sufficient knowledge as to the remaining allegations in paragraph 343 and, therefore, deny the same.

344.    As to paragraph 344 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 344, County Defendants are without sufficient knowledge as to the allegations in paragraph 344 and, therefore, deny the same.

345.    As to paragraph 345 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 345, County Defendants are without sufficient knowledge as to the allegations in paragraph 345 and, therefore, deny the same.

346.    As to paragraph 346 of the Complaint, County Defendants admit that Armor was obligated to provide training services as set out in the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 346 are directed to a defendant

other than County Defendants for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants are with sufficient knowledge as to the remaining allegations in paragraph 346 of the Complaint and, therefore, deny the same.

347.    As to paragraph 347 of the Complaint, County Defendants admit that Armor was obligated to provide training services as set out in the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 347 are directed to a defendant other than County Defendants for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants are with sufficient knowledge as to the remaining allegations in paragraph 347 of the Complaint and, therefore, deny the same.

348.    As to paragraph 348 of the Complaint, County Defendants admit that Armor was obligated to provide training services as set out in the Services Contract between the Board of County Commissioners of El Paso County and Armor Correctional Health Services, Inc.  The balance of the allegations in paragraph 348 are directed to a defendant other than County Defendants for which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny the allegations, County Defendants are with sufficient knowledge as to the remaining allegations in paragraph 348 of the Complaint and, therefore, deny the same.

349.    As to paragraph 349 of the Complaint, the allegations are directed to a

defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 349, County Defendants are without sufficient knowledge as to the allegations in paragraph 349 and, therefore, deny the same.

350.   As to paragraph 350 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 350, County Defendants are without sufficient knowledge as to the allegations in paragraph 350 and, therefore, deny the same.

351.   As to paragraph 351 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 351, County Defendants are without sufficient knowledge as to the allegations in paragraph 351 and, therefore, deny the same.

352.   As to paragraph 352 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 352, County Defendants are without sufficient knowledge as to the allegations in paragraph 352 and, therefore, deny the same.

353.   As to paragraph 353 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit

or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 353, County Defendants are without sufficient knowledge as to the allegations in paragraph 353 and, therefore, deny the same.

354.   As to paragraph 354 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 354, County Defendants deny the same.

355.   As to paragraph 355 of the Complaint, the allegations are directed to a defendant other than County Defendants, and County Defendants are not required to admit or deny these allegations.  To the extent that County Defendants are required to admit or deny the allegations in paragraph 355, County Defendants deny the same.

## FOURTH CLAIM FOR RELIEF
### Negligence Causing Wrongful Death
### Colo. Rev. Stat. §§ 13-21-201 *et seq.*
### (By Elizabeth Lemuel, individually, Z.D-L.M.L., D.J.L., D.S.L., and Z.A.T.L. Against Defendant El Paso County)

356.   County Defendants incorporate their answers to the preceding paragraphs of the Complaint as though fully set forth herein.

357.   County Defendants deny the underlying premise of and the allegations in paragraph 357 of the Complaint.

358.   County Defendants deny the underlying premise of and the allegations in paragraph 358 of the Complaint.

359.   As to paragraph 359 of the Complaint, County Defendants admit that a notice

of claim dated January 25, 2019, was provided to the El Paso County Attorney. County Defendants deny that the notice of claim was sufficient or otherwise complied with the requirements of the Colorado Governmental Immunity Act, C.R.S. § 24-10-101, *et seq*. and otherwise deny the allegations in paragraph 359 of the Complaint.

360.    As to paragraph 360 of the Complaint, Plaintiffs state legal conclusions which County Defendants need not admit or deny. To the extent County Defendants are required to admit or deny these allegations, County Defendants state that Plaintiffs have incompletely and inaccurately described the mission and purpose of a detention facility and, therefore, deny the same.

361.    As to paragraph 361 of the Complaint, Plaintiffs state legal conclusions which County Defendants need not admit or deny. To the extent County Defendants are required to admit or deny these allegations, County Defendants state that Plaintiffs have incompletely and inaccurately stated the scope of such responsibilities for medical care of inmates at a detention facility and, therefore, deny the allegations in paragraph 361 of the Complaint.

362.    As to paragraph 362 of the Complaint, Plaintiffs state legal conclusions which County Defendants need not admit or deny. To the extent County Defendants are required to admit or deny these allegations, County Defendants state that Plaintiffs have incompletely and inaccurately described the statutory and constitutional and common law duties with regard to detention of inmates and provision of medical care and, therefore, deny the same.

363.    As to paragraph 363 of the Complaint, Plaintiffs state legal conclusions which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny these allegations, County Defendants state that Plaintiffs have incompletely and inaccurately described supervision responsibilities with regard to employees and, therefore, deny the same.

364.    County Defendants deny the underlying premise of and the allegations in paragraph 364 of the Complaint.

365.    County Defendants deny the underlying premise of and the allegations in paragraph 365 of the Complaint.

366.    County Defendants deny the underlying premise of and the allegations in paragraph 366 of the Complaint.

367.    County Defendants deny the underlying premise of and the allegations in paragraph 367 of the Complaint.

368.    County Defendants deny the underlying premise of and the allegations in paragraph 368 of the Complaint.

369.    As to paragraph 369 of the Complaint, Plaintiffs state legal conclusions which County Defendants need not admit or deny.  To the extent County Defendants are required to admit or deny these allegations in paragraph 369, County Defendants state that Plaintiffs have incompletely and inaccurately described the vicarious liability responsibilities of El Paso County and, therefore, deny the allegations in paragraph 369 of the Complaint.

370.    County Defendants deny the underlying premise of and the allegations in

paragraph 370 of the Complaint.

371.   County Defendants deny the underlying premise of and the allegations in paragraph 371 of the Complaint.

372.   County Defendants deny the underlying premise of and the allegations in paragraph 372 of the Complaint.

373.   County Defendants deny the underlying premise of and the allegations in paragraph 373 of the Complaint.

374.   County Defendants deny the underlying premise of and the allegations in paragraph 374 of the Complaint.

375.   County Defendants deny the underlying premise of and the allegations in paragraph 375 of the Complaint.

376.   County Defendants deny the underlying premise of and the allegations in paragraph 376 of the Complaint.

377.   County Defendants deny the underlying premise of and the allegations in paragraph 377 of the Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.   County Defendants allege that Plaintiffs have failed to state a claim or cause of action against County Defendants upon which relief may be granted.

2.   County Defendants allege that the sole proximate cause of the injuries and/or damages alleged were due to the negligence and/or fault of Lemuel or that the negligence and/or fault of Lemuel contributed to the same. On a comparative basis, the negligence

and/or fault of Lemuel far outweighs that of County Defendants, whose negligence and/or fault is specifically denied.

3.      County Defendants allege that if County Defendants are found to be liable for any wrongful act under any state law or federal law claim raised by Plaintiffs, then the County Defendants are entitled to a reduction in the damages asserted against them based on the fault or amount paid in settlement by any other defendant or third-party defendant, due to any provision of Colorado law including comparative fault contribution among tortfeasors and set-off.

4.      County Defendants allege that Plaintiffs' alleged injuries and damages, if any, were proximately caused by the acts of a third party, not a party to this action, over whom County Defendants had no control nor right of control.

5.      County Defendants allege that Plaintiffs have failed to join an indispensable party.

6.      County Defendants allege that Lemuel assumed the risk of the injury or damages claimed.

7.      County Defendants allege that Plaintiffs have failed to mitigate their damages, if any, as required by law.

8.      County Defendants allege that Plaintiffs' claims for non-economic damages are subject to the limitations of C.R.S. § 13-21-102.5.

9.      County Defendants allege that Plaintiffs' claims for damages are subject to reduction based on the limitation of damage provisions of the Colorado Wrongful Death

Act including, but not limited to, C.R.S. § 13-21-203.

10.     County Defendants allege that Plaintiffs' claims for damages are subject to reduction based on compensation from another or collateral source pursuant to C.R.S. § 13-21-111.6.

11.     County Defendants allege that Plaintiffs' claims for punitive or exemplary damages are barred or subject to the limitations of C.R.S. § 13-21-102.

12.     County Defendants allege that Plaintiffs' claims are barred as they were not brought within one year as required by the statutory limitations of actions provisions of C.R.S. § 13-80-103.

13.     County Defendants allege that Plaintiffs' claims are barred by their failure to give notice as required by the Colorado Governmental Immunity Act, C.R.S. § 24-10-109.

14.     County Defendants allege that Plaintiffs' claims are barred or otherwise limited by the provisions of C.R.S. § 24-10-101, *et seq*.

15.     County Defendants allege that Plaintiffs' claims are barred as, at all times relevant to Plaintiffs' Complaint, the individual defendants were performing discretionary functions and were otherwise acting in good faith and are, therefore, entitled to official, good faith, and qualified immunity.

16.     County Defendants allege that Plaintiffs' claims are barred as, at all times relevant to Plaintiffs' Complaint, the individual defendants did not violate a clearly established statutory or constitutional right of Plaintiffs and, as a consequence, Plaintiffs' claims against these defendants are barred by the doctrines of official, good faith, and

qualified immunity.

17.     County Defendants allege that any force used by the individual County Defendants was objectively reasonable.

18.     Individual County Defendants allege that any force used with regarding to Lemuel was reasonable as acting in self-defense from attempts by Lemuel to cause injury to individual County Defendants.

19.     County Defendants allege that Plaintiffs' claim for punitive or exemplary damages violates the Excessive Fines clause of the Eighth Amendment to the United States Constitution; the Due Process clause of the Fourteenth Amendment to the United States Constitution; the Equal Protection clause of the United States Constitution; and the Double Jeopardy clause of the Fifth Amendment to the United States Constitution.

20.     County Defendants allege that the inmate policies made a subject of this matter serve a legitimate security and penological objective.

21.     County Defendants allege that Plaintiffs' claims are subject to reduction under the doctrine of set-off.

22.     County Defendants reserve the right to add additional defenses as may be revealed in the discovery process and as permitted by law and the rules of court.

WHEREFORE, having fully answered Plaintiffs' Complaint, County Defendants pray for dismissal of same, for costs expended in the defense hereof, for expert witness fees and attorney fees, and for such other and further relief as the Court deems just and proper.

## THIRD-PARTY COMPLAINT

### I.  STATEMENT OF PARTIES AND JURISDICTION

1.      County Defendants and Third Party Plaintiffs EL PASO COUNTY, COLORADO; DEPUTY DANIEL LEBARON; DEPUTY BRITTANY STUBBS (whose current last name is WILLIAMS); DEPUTY ANN BELL (whose current last name is HANZICH); DEPUTY BRANDON BURGESS; SERGEANT KIMBERLY MILLER; SERGEANT JAMES RODRIGUEZ; DEPUTY JOHN BRIENZA; DEPUTY CHADWICK YOUNG; SERGEANT CODY WRIGHT; and DEPUTY KEVIN THORPE ("County Defendants") bring this Third-Party Complaint against UCH-MHS d/b/a UNIVERSITY OF COLORADO HEALTH MEMORIAL HOSPITAL CENTRAL; LESLIE MOATS, M.D.; and REBECCA EIGHTEEN, RN ("Third-Party Defendants"), pursuant to Fed.R.Civ.P 14.

2.      This Court has jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367.

3.       On June 25, 2020, suit was brought in the above-captioned matter in United States District Court for the District of Colorado, No. 20-cv-01875 ("Civil Action"), for claims arising out of the death of Deramus DeWayne Lemuel ("Lemuel"). Plaintiffs in the Civil Action are identified as the Estate of Deramus DeWayne Lemuel, by and through its personal representative, Elizabeth Lemuel; Elizabeth Lemuel, individually; Z.D.-L.M.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; D.J.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; D.S.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; and Z.A.T.L.,

individually, a minor, by and through their legal guardian, Elizabeth Lemuel.  County Defendants are among the defendants in the Civil Action, and it is alleged against the County Defendants that Mr. Lemuel's death was caused, in whole or in part, because of the conduct of the County Defendants following the August 1, 2018, discharge and clearance of Lemuel from Memorial Hospital Central a/k/a UCHealth Memorial Hospital Central, a general hospital located at 1400 E. Boulder Street, Colorado Springs, Colorado, 80909, for transportation and incarceration at the El Paso County, Colorado, Criminal Justice Center ("CJC") located at 2739 E. Las Vegas Street, Colorado Springs, Colorado, 80906.

4.     Lemuel was a patient of Memorial Hospital Central from July 31, 2018, to August 1, 2018, and again from August 1, 2018, through August 14, 2018.

5.     UCHealth Memorial Hospital Central is the trade name under which UCH-MHS conducts business at 1400 E. Boulder Street, Colorado Springs, Colorado, 80909. Defendant UCH-MHS d/b/a Memorial Hospital a/k/a UCHealth Memorial Hospital Central ("Memorial Hospital Central" or "Hospital") is a domestic nonprofit corporation with its principal office at 1400 E. Boulder Street, Colorado Springs, Colorado, 80909. Upon information and belief, at all times material to this action, Memorial Hospital Central was engaged in the business of owning, operating and/or managing hospitals, including but not limited to providing healthcare, medical services, therapy, rehabilitation, nursing care, and custodial care to the public in El Paso County, Colorado, and was, at all times material hereto, duly licensed to operate same in Colorado.

6.      Memorial Hospital Central holds itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Hospital, out to the public as competent and skillful healthcare providers and practitioners of medicine. Memorial Hospital Central is personally, directly, and vicariously liable, among other things, for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners, all of whom played a role in the care provided to Lemuel and in the operation of the Hospital.

7.      At all relevant times, Leslie M. Moats, M.D. ("Dr. Moats"), was a physician licensed to practice medicine in the State of Colorado.

8.      At all relevant times, Rebecca Eighteen, RN ("Nurse Eighteen"), was a registered nurse licensed in the State of Colorado.

9.      On or about January 25, 2019, counsel for the Plaintiffs in the Civil Action provided notice of claim pursuant to C.R.S. §24-10-101, *et seq*. Included in that notice was a notice of claim against the Third-Party Defendants. On or about July 29, 2020, counsel for County Defendants provided a supplemental notice of claim pursuant to C.R.S. §24-10-101, *et. seq.* to the Third-Party Defendants setting out notice regarding the claims now made in this Third-Party Complaint.

## II.  FACTUAL BACKGROUND

10.      Plaintiffs allege in their Complaint that on July 31, 2018, at approximately 8:45 p.m., law enforcement officers arrested Lemuel on an outstanding warrant for a parole violation. Upon his arrest, the officers observed an open bag of what was suspected to be

methamphetamine inside his mouth. The officers asked Mr. Lemuel to spit out the bag, and a white substance was found inside the bag. Believing that there had been more methamphetamine in the bag than the amount remaining and that Lemuel may have ingested a toxic amount of methamphetamine, the officers drove Lemuel to UCHealth Memorial Hospital Central for medical assessment and determination of whether it was medically appropriate for Lemuel to be cleared for transport and incarceration. (Complaint at ¶¶ 46-50.)

11.     Lemuel was transported by Parole Officers Louis Flores and David Chavez to Memorial Hospital Central Emergency Department, arriving on July 31, 2018, at or about 21:55 hours. The officers advised medical staff at Memorial Hospital Central that Lemuel had a history of swallowing and hiding drugs in his mouth and that they believed Lemuel was not being very open and honest of how much drugs he had ingested.

12.     On admission to the Emergency Department the acuity of Lemuel's presentation was deemed "urgent" with one of the diagnoses as "poisoning by methamphetamine."   Dr. Moats was assigned as the emergency attending physician.

13.     Dr. Moats initiated an assessment of Lemuel at or about 22:02 hours. In his interview of Lemuel, Dr. Moats recorded:

> Social History: He reports that he has been smoking Cigarettes.  He has been smoking about 0.50 packs per day. He does not have any smokeless tobacco history. He reports that he drinks alcohol. He reports that he does not use drugs.

14.     Dr. Moats recorded in his notes that the officers who transported Lemuel to Memorial Hospital Central had reported Lemuel ingested methamphetamine out of a bag

"about an hour prior to his arrival" but did not record that Lemuel had a history of drug abuse and swallowing and hiding drugs in his mouth and that they believed Lemuel was not being very open and honest of how much drugs he had ingested. Instead, Dr. Moats did not determine that Lemuel suffered from drug intoxication at all and recorded as his opinion as follows:

> Based on the presenting signs and symptoms as well as the available laboratory data, it appears most likely that the patient has acute ethanol intoxication. Presently, the patient appears stable for discharge with no process that requires further immediate testing or hospitalization and a low likelihood of decompensation or clinical worsening at this point. However, it is difficult to rule out all possibilities during an ER visit so certainly if symptoms should worsen or change significantly I have encouraged the patient to return immediately as further testing or treatment may be indicated in those cases.

15.     Although Dr. Moats referred to "laboratory data" as part of the evidence for his conclusion that Lemuel suffered from acute ethanol intoxication, the medical records do not demonstrate that any testing for alcohol intoxication was done. Nor is there any indication that at any time prior to the discharge of Lemuel that toxicological testing was done.

16.     Before discharging Lemuel, Dr. Moats ordered an abdominal x-ray. That x-ray was taken at or about 23:17 hours. The results of the x-ray were reported at or about 23:26 hours and found that there was no evidence on plain radiographic imaging of acute abdominal pathology.

17.     At or about 23:26 hours, Lemuel was administered an injection of Ativan, 2mg.

18.     It is not clear from the records whether, following the x-ray and administration of Ativan, Dr. Moats saw Lemuel or what observations were made by nursing staff of Lemuel. Dr. Moats recorded that at some point he explained to Lemuel his findings and explained reasons for hm to return right away. Lemuel was marked for discharge on August 1, 2018, at or about 00:03 hours.

19.     At or about 00:45 hours on August 1, 2018, Nurse Greenwald records that she attempted to have Lemuel walk to a wheelchair for discharge but it took three people to get Lemuel to walk. Nurse Greenwald reported that Lemuel was diaphoretic, shaking, and talking non-sensical. Nurse Greenwald contacted Dr. Moats and asked if Lemuel could stay awhile longer prior to discharge for monitoring and was told to move Lemuel to Care Unit 4.

20.     At or about 01:10 hours, after being discharged and then returned to the Emergency Department, Nurse Eighteen recorded that:

> Pt transferred from CU1 per physician's orders.  Writer received report at handover. Apparently Pt was suspected to have swallowed unknown amount of drugs in order to avoid arrest by CSPD.  Pt had been medicated with Ativan 2 mg IM and had been cleared for discharge to CJC.  However, physician ordered that Pt be transferred to CU4 for further monitoring before being taken to CJC.  Pt's vital signs had stabilized after administration of Ativan, although he appeared to be experiencing some muscle spasms and rigidity secondary to possible ingestion of methamphetamine.  Pt brought over in bed, hands cuffed in front of him.  Writer address Pt, who responded by mumbling and grunting, and turning head away.  Pt was tossing his head from side to side, then periodically relaxing.  Eyes remained closed.  Pt was positioned with head of bed slightly elevated, respirations between 20-22. O2 between 94%-96% on R/A.  Pt somewhat diaphoretic, although afebrile. Writer used manual BP cuff to assess accurate BP as Pt too agitated to remain still for long.

21.    The nursing notes described above demonstrate that Lemuel had significantly worsened.

22.    At or about  approximately 002:30 hours, after being discharged and then returned, Nurse Eighteen recorded that:

> Decreasing severity of muscle twitches and restlessness noted.   Pt mumbling, opening eyes, looking at staff and mumbling again. Pt noted to be dozing lightly at times, mumbling in sleep.   Writer requested order for Benadryl 50 mg IM to further calm Pt.

23.    Benadryl was administered at or about 02:34 hours.

24.    At or about 03:06 hours, Dr. Moats ordered a urine screen for drugs of abuse (UTOX). A specimen collection was done at 03:07 hours by Nurse Eighteen.

25.    At 03:14 hours, Nurse Eighteen recorded that Lemuel's blood pressure and pulse were obtained and when these were reported to Dr. Moats, Dr. Moats cleared Lemuel for discharge. Such discharge was cleared before the results of the urine screen for drugs was obtained and less than forty-five minutes since Lemuel was reported as still having muscle twitches and restlessness and was mumbling.

26.    By 03:16 hours, Lemuel was reported as having departed the Emergency Department.

27.    At or about 03:23 hours, Nurse Eighteen recorded that the "order for the UTOX entered in error by this writer. No UTOX was ordered for this patient. Writer has made Dr. Moats aware of error."

28.    Upon transporting officers' arrival at CJC, Lemuel was escorted into Cell 3 in the Intake area of CJC at approximately 03:57:02 hours.  On information and belief, by

04:09 hours, Lemuel had gone into cardiac arrest due to the effects of methamphetamine intoxication.

29.     At or about 04:11:28 hours, outside medical assistance had been called for Lemuel.  Lifesaving efforts were made to revive Lemuel.  At or about 04:24:24 hours, the Colorado Springs Fire Department took over lifesaving efforts to include chest compressions.  Lemuel left CJC at or about 04:39:36 hours by ambulance.

30.     At or about 04:53 hours on August 1, 2018, Lemuel was returned to Memorial Hospital Central.  Records of Memorial Hospital Central note that Lemuel had been observed in the emergency room on July 31, 2018, and during the early morning hours of August 1, 2018, "following an apparent large ingestion of methamphetamine" and "[a]fter return to jail he had cardiac arrest and seizure activity."  Mario Fadila, M.D., stated as an impression that this was likely due to a probable ingestion of methamphetamine.

31.     The UTOX screen for drugs of abuse on the sample taken by Nurse Eighteen at 03:07 hours just before Lemuel's discharge and transport to CJC was, on Lemuel's return to Memorial Hospital Central, completed and was positive for, in part, methamphetamine and MDMA (ecstacy).

32.     Dr. Moats, at or about 05:02 hours, ordered a blood test for Lemuel to determine the presence of ethanol. The result was normal.

### III.  FIRST CLAIM FOR RELIEF
### (Leslie Moats, M.D. - Negligence/Wrongful Death)

33.     Third-Party Plaintiffs incorporate paragraphs 1-32 of this Third-Party

Complaint as if fully set forth herein.

34.     On July 31 through August 1, 2018, Lemuel came under the care and treatment of Dr. Moats for assessment, care and treatment of suspected methamphetamine ingestion.

35.     Dr. Moats was negligent in his care, assessment and treatment of Lemuel.

36.     As a direct and proximate result of the negligence of Dr. Moats, Lemuel died.

37.     As a licensed physician specializing in emergency medicine, Dr. Moats had a duty to Lemuel to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians under the same or similar circumstances.

38.     Dr. Moats breached that duty and was negligent with regard to the assessment, care and treatment of Lemuel by, but not limited to:

> a.     Failure to complete a reasonable evaluation of Lemuel's potential toxic ingestion of methamphetamine exposure;
>
> b.     Failure to perform regular and accurate assessments of Lemuel during the course of physical and mental health;
>
> c.     Failure to recognize the deterioration of Lemuel when symptoms of toxic ingestion of methamphetamine presented;
>
> d.     Failure to recognize the need for Lemuel's placement in critical care;
>
> e.     Failure to perform timely and appropriate toxicological tests to confirm ingestion of methamphetamine or to identify other drugs;
>
> f.     Failure to perform timely and appropriate alcohol level tests if the

suspicion or determination was that Lemuel's impairment was due to alcohol and/or assess for possible DTs;

g.      Premature and improper discharge and release of Lemuel for transport and incarceration in jail; and

h.      Failure to provide sufficient and accurate discharge information and instructions.

39.      As a direct and proximate result of the negligence of Dr. Moats, Lemuel died.

40.      As a result of the death of Lemuel, a civil action was filed in the United States District Court for the District of Colorado, No. 20-cv-01875, filed on June 25, 2020 ("Civil Action"). Plaintiffs in the Civil action are the Estate of Deramus DeWayne Lemuel, by and through its personal representative, Elizabeth Lemuel; Elizabeth Lemuel, individually; Z.D.-L.M.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; D.J.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; D.S.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; and Z.A.T.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel, against several defendants including the County Defendants. Plaintiffs allege injuries and damages caused by the death, including claims brought pursuant to 42 USC § 1983 for alleged violation of Lemuel's constitutional rights and for wrongful death and for economic and non-economic damages in an amount to be determined at trial.

41.      County Defendants seek assessment of negligence and/or fault and damages against Dr. Moats in the Civil Action for apportionment, contribution, or otherwise

to satisfy damages, in whole or in part, that may be awarded to Plaintiffs in the Civil Action.

## IV.  SECOND CLAIM FOR RELIEF
### (Rebecca Eighteen, RN - Negligence/Wrongful Death)

42.     Third-Party Plaintiffs incorporate paragraphs 1-41 of this Third-Party Complaint as if fully set forth herein.

43.     On July 31 through August 1, 2018, Lemuel came under the care and treatment of Nurse Eighteen for assessment, care and treatment of suspected methamphetamine ingestion.

44.     As a nurse, Nurse Eighteen had a duty to Lemuel to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of nurses under the same or similar circumstances.

45.     Nurse Eighteen breached that duty and was negligent with regard to the assessment, care and treatment of Lemuel by, but not limited to:

    a.     Failure to perform regular and accurate assessments of physical and mental health;

    b.     Premature and improper discharge and release of Lemuel for transport and incarceration in jail;

    c.     Failure to provide sufficient and accurate discharge information and instructions; and

    d.     Failure to communicate accurate description of Lemuel's presentation.

46.     As a direct and proximate result of the negligence of Nurse Eighteen, Lemuel

died.

47.     As a result of the death of Lemuel, a civil action was filed in the United States District Court for the District of Colorado, No. 20-cv-01875, filed on June 25, 2020 ("Civil Action").  Plaintiffs in the Civil action are the Estate of Deramus DeWayne Lemuel, by and through its personal representative, Elizabeth Lemuel; Elizabeth Lemuel, individually; Z.D.-L.M.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; D.J.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; D.S.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel; and Z.A.T.L., individually, a minor, by and through their legal guardian, Elizabeth Lemuel against several defendants including the County Defendants.  Plaintiffs allege injuries and damages caused by the death, including claims brought pursuant to 42 USC § 1983 for alleged violation of Lemuel's constitutional rights and for wrongful death and for economic and non-economic damages in an amount to be determined at trial.

48.     County Defendants seek assessment of negligence and/or fault and damages against Nurse Eighteen in the Civil Action for apportionment, contribution, or otherwise to satisfy damages, in whole or in part, that may be awarded to Plaintiffs in the Civil Action.

## V.  THIRD CLAIM FOR RELIEF
### (UCH-MHS d/b/a Memorial Hospital a/k/a
### UCHealth Memorial Hospital Central - Respondeat Superior)

49.     Third-Party Plaintiffs incorporate paragraphs 1-48 of this Third-Party Complaint as if fully set forth herein.

50.     Memorial Hospital Central had a special relationship with, and owed a special duty of care to, its patients, including Lemuel, who sought care and treatment at Memorial Hospital Central.

51.     At all times relevant to this matter, Memorial Hospital Central acted individually and/or by and through its parent corporations, subsidiaries, agents, and employees, including but not limited to doctors, nurses and healthcare providers.

52.     At all times relevant to this mater, Memorial Hospital Central agents and/or employees, including, but not limited to, Dr. Moats and Nurse Eighteen, were acting in the course and scope of their respective agency and/or employment.  Accordingly, pursuant to the doctrine of respondeat superior, Memorial Hospital Central is responsible for the conduct and resulting damages caused by its agents and/or employees.

WHEREFORE, Third-Party Plaintiffs respectfully pray for an assessment of negligence and/or fault and damages against Third-Party Defendants in the Civil Action for apportionment, contribution, and or otherwise to satisfy damages, in whole or in part, that may be awarded to Plaintiffs arising out of the death of Lemuel in the Civil Action and/or against the County Defendants .

COUNTY DEFENDANTS RESPECTFULLY REQUEST A TRIAL BY JURY ON ALL CLAIMS AND ISSUES.

Respectfully submitted,

Date: August 20, 2020                    s/ Gordon L. Vaughan_____
                                         Gordon L. Vaughan
                                             VAUGHAN & DeMURO
                                             111 South Tejon, Suite 545
                                             Colorado Springs, CO 80903
                                             (719) 578-5500 (phone)
                                             (719) 578-5504 (fax)
                                             gvaughan@vaughandemuro.com(e-mail)
                                         ATTORNEY FOR COUNTY DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Darold Killmer**
dkillmer@kln-law.com

**Reid Allison**
rallison@kln-law.com

**Liana Orshan**
lorshan@kln-law.com

**Michael Fairhurst**
mfairhurst@kln-law.com

**Simone Montoya**
smontoya@messner.com

**Margaret Gray**
mgray@messner.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

                                         s/ Gordon L. Vaughan_____
                                         Gordon L. Vaughan