IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01875-PAB-KMT

ESTATE OF DERAMUS DEWAYNE LEMUEL, by and through its personal representative Elizabeth Lemuel, et al.,

   Plaintiffs,

v.

EL PASO COUNTY, COLORADO, et al.,

   Defendants,

and

EL PASO COUNTY, COLORADO, et al.,

   Third-Party Plaintiffs,

v.

UCH-MHS d/b/a UNIVERSITY OF COLORADO HEALTH MEMORIAL HOSPITAL CENTRAL, et al.,

   Third-Party Defendants.
_____

**COUNTY DEFENDANTS' RESPONSE TO THIRD-PARTY DEFENDANT MOATS'S MOTION TO DISMISS THIRD-PARTY COMPLAINT**
_____

Defendants/Third-Party Plaintiffs EL PASO COUNTY, COLORADO; DEPUTY DANIEL LEBARON; DEPUTY BRITTANY STUBBS (whose current last name is WILLIAMS); DEPUTY ANN BELL (whose current last name is HANZICH); DEPUTY BRANDON BURGESS; SERGEANT KIMBERLY MILLER; SERGEANT JAMES RODRIGUEZ; DEPUTY JOHN BRIENZA; DEPUTY CHADWICK YOUNG; SERGEANT

CODY WRIGHT; and DEPUTY KEVIN THORPE (hereinafter collectively referred to as "County Defendants") submit the following Response to the Motion to Dismiss the Third-Party Complaint and Jury Demand filed by one of the Third-Party Defendants, Leslie Moats, M.D. (Doc. 44.)

### I.  INTRODUCTION

1.  County Defendants concede that they must state a plausible claim for relief in their Third-Party Complaint against Dr. Moats to withstand his Motion to Dismiss under Fed. R. Civ. P. 12 (b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, they will first address the allegations in Plaintiffs' Complaint and County Defendants' Third-Party Complaint before turning to the standards for a proper third-party complaint and the arguments made in Dr. Moats's Motion.

2.  Plaintiffs generally allege in their Complaint (Doc. 1) that County Defendants used excessive force against, and failed to provide medical care for, Plaintiffs' decedent, Deramus Lemuel ("Lemuel"), in the few minutes that he was in their custody at the El Paso County Criminal Justice Center ("CJC") on August 1, 2018. Plaintiffs made similar claims against Defendants Armor Correctional Health Services, Inc. ("Armor"), which had contracted with El Paso County to provide medical services, and two of its nurses. Plaintiffs' claims for relief rest on the (1) Fourteenth Amendment for excessive force brought under 42 U.S.C. § 1983 – against County Defendants and one of Armor's nurses; (2) Fourteenth Amendment under § 1983 for a failure to provide medical care – against all Defendants; (3) Colorado Wrongful Death Act for negligence – against Armor and its two

nurses; and (4) Colorado Wrongful Death Act for negligence – against El Paso County.

3. On August 20, 2020, County Defendants filed their Amended Answer and Third-Party Complaint against UCH-MHS d/b/a University of Colorado Health Memorial Hospital Central ("Hospital"), Leslie Moats, M.D., and Rebecca Eighteen, R.N. (Doc. 30.) On August 24, 2020, County Defendants filed their Certificate of Review under C.R.S. § 13-64-401, certifying that they consulted with an expert who reviewed the relevant documents and certified that the allegations of negligence in the Third-Party Complaint do not lack substantial justification. (Doc. 31.) County Defendants allege in the Third-Party Complaint that they have been sued by Plaintiffs who allege that their conduct, in whole or in part, caused Lemuel's death. (*Id.*, pp. 83-84, ¶ 3.) County Defendants, as Third-Party Plaintiffs, then make a number of allegations to support a plausible claim against Third-Party Defendants, which are summarized as follows.

4. Lemuel was brought to the Hospital at about 21:55 hours on July 31, 2018, by law enforcement officers who advised Hospital staff that they believed that Lemuel had swallowed methamphetamine; the staff recorded that Lemuel's presentation was "urgent," citing one diagnosis as "poisoning by methamphetamine." (*Id.*, pp. 85-86, ¶¶ 10-12.) Dr. Moats, assigned as the emergency attending physician, recorded that Lemuel admitted to drinking alcohol but denied using drugs, and that the officers reported that he had ingested methamphetamine about an hour earlier, but Dr. Moats did not record that Lemuel had a history of drug abuse and dishonesty about it. (*Id.*, pp.86-87, ¶¶ 12-14.) Dr. Moats wrote that based on the symptoms and "available laboratory data" "the patient has acute ethanol

3

intoxication" and "appears stable for discharge with no process that requires further immediate testing or hospitalization," even though the medical records do not show any testing for alcohol or toxicological testing at that point. (*Id*., p. 87, ¶¶ 14-15.) Lemuel was given Antivan at about 23:36, and Dr. Moats marked him for discharge. (*Id*., pp. 87-88, ¶¶ 16-18.)

   5. Despite the discharge order, a nurse who saw Lemuel at about 00:45 on August 1, 2018, noted that it took three people to try to help him walk to be discharged; he was diaphoretic and shaking and talking non-sensically; and she obtained Dr. Moats's permission to keep Lemuel in the Hospital longer before discharge. (*Id*., p. 88, ¶ 19.) At 01:10, Nurse Eighteen (also named as a Third-Party Defendant, but with separate counsel) recorded that Lemuel's vital signs had stabilized after taking Antivan but he was experiencing muscle spasms and rigidity secondary to possible ingestion of methamphetamine, he responded by mumbling and grunting and was somewhat diaphoretic, and that she had to use a manual cuff to take his blood pressure because he was too agitated to remain still for long, all of which showed that his condition had worsened. (*Id*., pp. 88-89, ¶¶ 19-21.) Nurse Eighteen also recorded at 02:30 that the muscle twitches and restlessness continued, although decreased, and that he was given Benadryl. (*Id*., p. 89, ¶¶ 22-23.)

   6. At about 03:06, the records show that Dr. Moats ordered a urine screen for drugs of abuse (UTOX) and Nurse Eighteen collected a specimen, but Dr. Moats discharged Lemuel before the results were reported and Lemuel left the Hospital about

03:16. In any event, Nurse Eighteen recorded about 03:23 that there was no order for the UTOX which was entered in error and she informed Dr. Moats of the error. (*Id*., p. 89, ¶¶ 24-27.)

7. After arriving at CJC, Lemuel was placed in a cell at about 03:57, went into cardiac arrest due to the methamphetamine at about 04:09, outside medical assistance was called at about 04:11, and the Fire Department took over lifesaving efforts at about 04:24 and left CJC at about 04:39 to return Lemuel to the Hospital. (*Id*., pp. 89-90, ¶¶ 28-29.) The Hospital records on the re-admission show that Lemuel had been observed in the emergency room a few hours earlier "following an apparent large ingestion of methamphetamine," and another physician noted his impression that the cardiac arrest and seizure activity was likely due to "probable ingestion of methamphetamine." (*Id*., p. 90, ¶ 30.) The UTOX screen for drugs of abuse was then completed and was positive in part for methamphetamine and MDMA (ecstacy), while a blood test for ethanol had a normal result. (*Id*., p. 90, ¶¶ 31-32.)

8. The first claim of the Third-Party Complaint is against Dr. Moats and alleges that he was negligent, breached his duty of care to Lemuel, and caused his death, resulting in a lawsuit being filed against County Defendants. (*Id*., pp. 90-92, ¶¶ 33-40.) County Defendants seek an assessment of negligence and/or fault and damages against Dr. Moats for apportionment, contribution or otherwise to satisfy the damages, in whole or in part, that may be awarded to Plaintiffs in this case. (*Id*., pp. 92-93, ¶ 41.)

**II.   COUNTY DEFENDANTS BROUGHT A PROPER THIRD-PARTY COMPLAINT**

9. Under Fed. R. Civ. P. 14(a)(1), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "A third-party claim may be asserted under Rule 14 (a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party." Wright & Miller, Federal Practice and Procedure (2010) § 1446, pp. 413-415. This includes third-party claims based on contribution and similar theories. *Id.,* at pp. 415-419. *Robertson v. REP Processing, LLC*, Civil Case No. 19-cv-02910-PAB-NYW, 2020 WL 5735081, *1-2 (D. Colo. 2020).

10. Under the Uniform Contribution Among Joint Tortfeasors Act as adopted in Colorado, "where two or more persons become jointly or severally liable in tort for the same injury to person or property or for same wrongful death, there is a right of contribution among them," but "only in favor of a tortfeasor who has paid more than his share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." C.R.S. § 13-50.5-102 (1) and (2). Further, Colorado law on comparative fault provides that in an action brought as a result of a death or injury, "no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury [or] death..." C.R.S. § 13-21-111.5 (1). "The jury shall return a special verdict ... determining the percentage of negligence or fault attributable to each of the parties and any persons not parties" who have been given a certain notice. C.R.S. § 13-21-111.5 (2).

6

11. Here, it is clear that the third-party claim against Dr. Moats arises from many of the same allegations in the Third-Party Complaint discussed above about what occurred at the Hospital on July 31 and August 1, 2018, as are found in Plaintiffs' Complaint. (Doc. 1, pp. 10-12, ¶¶ 52-64.) Based on these allegations, Dr. Moats's liability is dependent on the outcome of the main claim and/or he is secondarily liable to County Defendants based on his pro rata liability for his actions before Lemuel was even brought to the CJC. The allegations in the Third-Party Complaint state a plausible third-party claim against Dr. Moats.

### III. THE ARGUMENTS OF DR. MOATS ARE IRRELEVANT TO THE THIRD-PARTY COMPLAINT

12. The first argument of Dr. Moats is that the Third-Party Complaint must be dismissed as County Defendants have failed to establish that Dr. Moats owes them a duty of care because they had no physician-patient relationship. (Doc. 44, pp. 6-9.) Dr. Moats tries to support this argument with citations to a number of Colorado cases on medical malpractice and when a duty of care arises where a plaintiff sues a defendant for tortious actions.

13. But here, the claim in the Third-Party Complaint against Dr. Moats is brought under Rule 14(a) on the theory of contribution or other apportionable fault (Doc. 30, pp. 92-93, ¶ 41), not as a medical malpractice claim. As discussed above, impleader under Rule 14(a) is proper where the third-party defendant is or may be liable for all or part of the plaintiff's claim against the defendant. That is the case here where the actions of Third-Party Defendants, before Lemuel was even brought to the CJC, damaged Lemuel and

created the right for County Defendants to seek a determination on contribution or joint fault. In addition, as also noted above, the third-party defendant's liability must be dependent in some way on the outcome of the main claim or when the third-party defendant is secondarily liable to the third-party plaintiff. Here, the liability of Third-Party Defendants is heavily dependent on how they treated Lemuel on July 31 and August 1, 2018, and the determination of the secondary liability.

14. If Dr. Moats's argument is that County Defendants must use the same legal theory against him that Plaintiffs used against County Defendants, the law does not require that. "The third-party claim need not be based on the same theory as the main claim." Wright and Miller, Federal Practice and Procedure (2010) § 1446, p. 441. This treatise adds an analogous example: "there are cases in which the third-party claim is based on an express indemnity contract and the original complaint is framed in terms of negligence." (*Id.*) Also see *Maxfour Engineers and Architects, LLC v. ARB, Inc.,* 233 F.R.D. 602, 605 (D. Colo. 2006) ("The fact that the third-party defendant is not subject to the primary claims asserted by the plaintiff is no obstacle to third-party practice.").

15. Dr. Moats's second and closely related argument is that County Defendants do not have standing to bring a claim against him under the Wrongful Death Act. (Doc. 44, pp. 9-10.) This argument suffers from the same problem as Dr. Moats's first argument – County Defendants' third-party claim is based on contribution and apportionment of fault, not on the Wrongful Death Act. The Third-Party Complaint contains allegations about the acts and omissions of Dr. Moats to show that there is a factual basis to apportion his

negligence or fault with any of other parties, not to bring a Wrongful Death Act claim against him. County Defendants have standing under Colorado law to claim that Third-Party Defendants, as well as Defendants Armor and its nurses, must have any negligence or fault apportioned with any negligence or fault of County Defendants.

16.   The Third-Party Complaint satisfies Rule 14(a) because it is closely related to the facts alleged in the original Complaint. Each complaint focuses on how Lemuel was treated in a short period between late on the night of July 31, 2018, and early on the next morning of August 1 by County Defendants, Defendants Armor and its nurses, and Third-Party Defendants. "The general purpose of Rule 14 is to settle related matters in one litigation as far as possible and obtain consistent results from identical or similar evidence, thus preventing a duplication of effort for the courts and serving the interests of judicial economy." *Country Mutual Insur. Co. v. Rocky Mountain Construction Co., LLC,* No. 1:12cv00453 (REB-KMT), 2013 WL 438940, *2 (D. Colo. 2013), *citing Patten v. Knutzen*, 646 F. Supp. 427, 429 (D. Colo. 1986). "Since Rule 14 aims to reduce the multiplicity of litigation, it should be construed liberally." *Country Mutual,* at * 2 (citations omitted).

WHEREFORE, County Defendants request this Court to deny Dr. Moats's Motion to Dismiss.

Respectfully submitted,

Date:  11/16/20

s/ Gordon L. Vaughan
Gordon L. Vaughan
VAUGHAN & DeMURO
111 South Tejon, Suite 545
Colorado Springs, CO 80903
(719) 578-5500 (phone)

(719) 578-5504 (fax)
gvaughan@vaughandemuro.com (e-mail)
ATTORNEY FOR COUNTY DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Darold Killmer**
dkillmer@kln-law.com

**Reid Allison**
rallison@kln-law.com

**Liana Orshan**
lorshan@kln-law.com

**Michael Fairhurst**
mfairhurst@kln-law.com

**Simone Montoya**
smontoya@messner.com

**Paul Faraci**
pfaraci@faracileasure.com

**Jessie Marie Fischer**
jfischer@faracileasure.com

**Karen DuWaldt**
karen@kdemploymentlaw.com

**Stephen J. Hensen**
steve@hendulaw.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

s/ Gordon L. Vaughan
Gordon L. Vaughan