IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01875-PAB-KMT

ESTATE OF DERAMUS DEWAYNE LEMUEL, by and through its personal representative Elizabeth Lemuel, et al.,

   Plaintiffs,

v.

EL PASO COUNTY, COLORADO, et al.,

   Defendants,

and

EL PASO COUNTY, COLORADO, et al.,

   Third-Party Plaintiffs,

v.

UCH-MHS d/b/a UNIVERSITY OF COLORADO HEALTH MEMORIAL HOSPITAL CENTRAL, et al.,

   Third-Party Defendants.

_____

**COUNTY DEFENDANTS' RESPONSE TO HOSPITAL
THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**
_____

Defendants and Third-Party Plaintiffs EL PASO COUNTY, COLORADO; DEPUTY DANIEL LEBARON; DEPUTY BRITTANY STUBBS (whose current last name is WILLIAMS); DEPUTY ANN BELL (whose current last name is HANZICH); DEPUTY BRANDON BURGESS; SERGEANT KIMBERLY MILLER; SERGEANT JAMES RODRIGUEZ; DEPUTY JOHN BRIENZA; DEPUTY CHADWICK YOUNG; SERGEANT

CODY WRIGHT; and DEPUTY KEVIN THORPE (hereinafter collectively referred to as "County Defendants") submit this response to the motion to dismiss filed by Third-Party Defendants UCH-MHS d/b/a UNIVERSITY OF COLORADO HEALTH MEMORIAL HOSPITAL CENTRAL ("UCH" or "Memorial Hospital") and REBECCA EIGHTEEN, R.N. ("Nurse Eighteen") (sometimes collectively referred to as "Hospital Third-Party Defendants") (Doc. 50).

## I.   INTRODUCTION

1.   On June 25, 2020, suit was brought in the matter by Plaintiffs for claims arising out of the August 14, 2018, death of Deramus DeWayne Lemuel ("Lemuel") against El Paso County and ten of its deputies ("County Defendants")  as well as Armor Correctional Health Services, Inc., and two nurses employed by Armor ("Armor Defendants") (Doc. 1).

2.   The Complaint alleged, in part, that Lemuel was transported to Memorial Hospital on the evening of July 31, 2018, by arresting officers who believed Lemuel had ingested a baggie of methamphetamine (Doc. 1, ¶ 50).  During the early morning hours of August 1, 2018, Lemuel lapsed into "an obvious mentally and physically impaired state due to the methamphetamine he had ingested" (*Id.* at ¶ 56).  This included many of the alleged typical effects of methamphetamine which included "temporary delirium, panic, confusion, hallucinations, anxiety, and psychosis" (*Id.* at ¶ 58).  While at Memorial Hospital, nurses observed Lemuel "mumbling, tossing his head, and experiencing muscle spasms and rigidity 'secondary to methamphetamine use'" (*Id.* at  ¶ 60).  Nevertheless, Lemuel was

cleared for release for transport in a "very impaired condition" (*Id.* at ¶ 65), because of the methamphetamine ingestion, to the El Paso County Criminal Justice Center ("CJC").

3. Plaintiffs allege that Lemuel remained in that condition when he arrived at CJC but despite the "obvious" condition, Armor Defendant nurse Bedia and other Defendants who observed Lemuel around the time failed to provide him "care due to his impaired condition" (*Id.* at ¶¶ 77-78).

4. At CJC, Lemuel was transported to a holding cell where some of the individual County Defendants, at the direction of Armor Defendant nurse Bedia, sought to put him a safety smock (*Id.* at ¶¶ 75, 90). Plaintiffs allege that this was unnecessary and that, in an effort to place Lemuel in the smock, the individual County Defendants used excessive force (*Id.* at ¶¶ 90-103).

5. Within minutes of Lemuel's arrival at CJC, he went into cardiac arrest. Lemuel was returned to Memorial Hospital, where he died on August 14, 2018. On the autopsy it was documented that Lemuel "died as a result of complications of global hypoxic/ischemic brain injury due to cardiac arrest occurring in the setting of illicit drug intoxication and physical restraint by law enforcement" (*Id.* at ¶ 169 (Plaintiffs' emphasis removed)).

6. Plaintiffs brought four claims for relief: (1) 42 U.S.C. § 1983 for excessive force in violation of the 14th Amendment against County Defendants and one of Armor Defendants (nurse Bedia); (2) 42 U.S.C. § 1983 for failure to provide adequate medical care against all Defendants; (3) negligence causing wrongful death against Armor

Defendants; and (4) negligence causing death against El Paso County.

7. On July 30, 2020, County Defendants filed their Answer and Third-Party Complaint (Doc. 22). On August 20, 2020, County Defendants filed an Amended Answer and Third-Party Complaint (Doc. 30) ("Third-Party Complaint"). On August 26, 2020, County Defendants filed a Notice of Non-Party Liability under C.R.S. § 13-21-111.5(3) (a) and (b) (Doc. 35). The Third-Party Complaint named as third parties Memorial Hospital, Leslie Moats, M.D. ("Dr. Moats"), and Nurse Eighteen. The thrust of the Third-Party Complaint was that Third-Party Defendants acted negligently and were otherwise at fault in failing to properly assess Lemuel for treatment and release and by improperly releasing him to CJC.

8. The Third-Party Complaint set out three claims for relief against Third-Party Defendants for apportionment, contribution, or otherwise to satisfy damages, in whole or in part, that may otherwise be awarded to Plaintiffs against County Defendants. The first claim for relief is against Dr. Moats and alleges that he was negligent, breached his duty of care, and caused the death of Lemuel, resulting in a lawsuit being filed against County Defendants. The second claim is against Nurse Eighteen with similar allegations. The third claim is against Memorial Hospital based on the doctrine of respondent superior and breaches of its duty of care.

9. Salient facts with regard to the negligence or fault of Third-Party Defendants include, but not are not limited to:

- Faulty determination by Dr. Moats that Lemuel suffered from acute ethanol intoxication and that, although referring to "laboratory data" as part of the evidence for such

conclusion, no such laboratory data was obtained. (Doc. 30, pp. 86-87, ¶¶ 14-15.)

- No laboratory tests were done for Lemuel regarding methamphetamine or other drug intoxication until following his return from CJC. (*Id.* p. 87, ¶ 15.)

- Prior to Lemuel's release from Memorial Hospital, Dr. Moats ordered a urine screen for drugs of abuse (UTOX screen) and a specimen was collected but Lemuel was released before receiving the results of the urine screen. (*Id.*, p. 89, ¶ 24.)

- Following Lemuel's release, Nurse Eighteen recorded that the "order for the UTOX entered in error." (*Id.*, p. 89, ¶ 27.)

- On return to Memorial Hospital, the UTOX screen previously ordered was completed, demonstrating Lemuel was positive for methamphetamine and ecstasy. (*Id.*, p. 90, ¶ 31.)

10. County Defendants argued that Third-Party Defendants failed to perform regular and accurate assessments of physical and mental health, prematurely and improperly discharged and released Lemuel for transport and incarceration, failed to provide sufficient and accurate discharge information and instructions, and failed to communicate an accurate description of Lemuel's presentation to CJC.

11. County Defendants obtained a review from an experienced professional and filed a certificate of review required by C.R.S. § 13-20-602(3) on August 24, 2020 (Doc. 31).

## II. ARGUMENT

12. Although not raised in Hospital Third-Party Defendants' Motion to Dismiss, it is important for the purposes of the motion to distinguish between the two types of claims against County Defendants – the state law negligence claim against El Paso County and the two constitutional claims under § 1983 against all County Defendants.

13. As to the state law negligence claim over which this Court has supplemental jurisdiction, it is settled law that this Court will apply the substantive law of the state. That includes Colorado law on pro rata liability, C.R.S. § 13-21-111.5. *King v. McKillop*, 112 F. Supp. 2d 1214, 1217-18 (D. Colo. 2000). As noted above, County Defendants filed a designation of nonparty as to Dr. Moats, UCH, and Nurse Eighteen. Therefore, at trial, the Court should instruct the jury to determine damages on that claim and the percentages of fault as to those three nonparties, as well as any parties in the case, and El Paso County will only be liable on this claim for the percentage of damages the jury allocates to it.

14. Hospital Third-Party Defendants seem to agree with this analysis at some points in their motion but seem to disagree with it at others and tie it unnecessarily to the analysis of the Third-Party Complaint. County Defendants believe that their analysis addressed above is applicable without regard to the Third-Party Complaint issues.

15. Turning to the two claims against County Defendants under § 1983, County Defendants contend that it is necessary to add the three Third-Party Defendants to assert the claim for contribution against them, as is pleaded in the Third-Party Complaint.

16. Hospital Third-Party Defendants argue that the Third-Party Complaint is improper because it is an attempt by County Defendants to use a prior version of Fed. R. Civ. P. 14 that allowed a third party to be added if the plaintiff had a claim against it, while the current version of the rule requires that the defendant have a claim against the third party. They also argue that County Defendants have no right to assert a negligence claim against them for lack of standing.

17.     But, neither argument is applicable. County Defendants acknowledge that Rule 14 requires third-party defendants have liability to third-party plaintiffs, but it is County Defendants' position that their right to contribution supplies such liability.  While Plaintiffs may also have or had a claim against Hospital Third-Party Defendants, that fact does not preclude County Defendants from using Rule 14 to maintain their claims against Third-Party Defendants.

18.     As alleged in the Third-Party Complaint, Hospital Third-Party Defendants and Dr. Moats acted in an improper manner in treating, and failing to treat, Lemuel on the night of July 31, 2018, and for several more hours on the morning of August 1, and then prematurely released him to CJC where he had fatal medical problems within a few minutes.  County Defendants contend that these actions of Third-Party Defendants resulted, in part or in whole, in the death of Lemuel, providing County Defendants a right to contribution.

19.     Hospital Third-Party Defendants also take too narrow a view of the use of Fed. R. Civ. P. 14(a)(1).  It may be used by defendants seeking contribution from other alleged tortfeasors or parties at fault not named as parties.  The rule provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Third-party claims may be asserted under this rule "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party." Wright & Miller, Federal Practice and Procedure (3d. ed. 2010) § 1446,

pp. 413-415.[1]  This includes third-party claims based on contribution and similar theories. *Id.* at pp. 415-419.

20.     Other commentators have determined that Rule 14 is not intended to preclude a third-party claim for contribution[2] as such claim satisfies the obligation that runs from third-party defendant to third-party plaintiff. As noted in Baicker-McKee, et al., Federal Civil Rules Handbook Authors' Commentary on Rule 14, p. 558 (2021 edition):

> Third-party practice is also commonly employed when an alleged tortfeasor seeks contribution from others who may also be liable but whom the plaintiff has not sued.

---

[1]     As stated in Wright & Miller at § 1446:

> The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.

[2]     The historical context of permitting contribution claims under Rule 14 was discussed in Wright & Miller at § 1441:

> The common-law vouching-to-warranty practice was formalized in Order XVI of the English Judicature Act of 1873 and was expanded in 1883 to permit defendant to implead persons against whom defendant claimed a right of contribution or indemnity, or any other remedy. In the same year, a similar right was judicially recognized in the United States in admiralty suits. From this background various forms of third-party practice began to develop in several states and, prior to the adoption of the federal rules, these found their way into the federal district courts in actions at law by virtue of the Conformity Act. Since 1938, the federal courts, cognizant of the advantages of third-party practice, have afforded Rule 14 a liberal construction. As a result, impleader has been utilized in a variety of circumstances to consolidate actions that otherwise would have required two or more suits.

21. To be sure, Rule 14 requires that claims against third-party defendants relate to claims pending against a third-party plaintiff and must depend in some degree on the outcome of the original action. *Watson v. Cartee*, 817 F.3d 299 (6th Cir. 2016) (adjudication of third-party complaint required determination of "operative facts ... common to resolve original action"). *See also* Federal Civil Rules Handbook at pp. 561-562. And, "[t]he purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." Federal Civil Rules Handbook at p. 559. Here, the liability of Hospital Third-Party Defendants is dependent on the outcome of the "main claim" of Plaintiffs on the medical and physical treatment and death of Lemuel. Hospital Third-Party Defendants also have secondary liability to County Defendants for contribution under the UCATA, as will be discussed further below.

22. This Court recently recognized these general principles on when a third-party claim for contribution or indemnification may be allowed, and added that Rule 14 was intended to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and that Rule 14 should be liberally construed to effectuate this purpose. *Robertson v. REP Processing, LLC*, Civil Case No. 19-cv-02910-PAB-NYW, 2020 WL 5735081, *2 (D. Colo. September 24, 2020) (the Court ultimately rejected the third-party claim because the FLSA did not allow indemnification between joint employers).

23. If County Defendants cannot maintain the Third-Party Complaint, they may be required to satisfy all damages assessed by the jury on the § 1983 claims without being

able to have the jury consider the liability of Hospital Third-Party Defendants, and County Defendants will not be able to obtain contribution or a setoff for that liability.

24.   County Defendants contend that if Hospital Third-Party Defendants are parties, the Court could instruct the jury that if it awards damages, to then divide the award among each defendant and third-party defendant based on instructions on the potential liability of each.

25.   This approach has been addressed in some recent cases discussing the analogous issue of setoffs among defendants in § 1983 cases. In *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019), the court considered whether a defendant sheriff, who was found liable for a judgment based on a $10,000,000 jury verdict, was entitled to a setoff for the amount that the medical defendants paid to the plaintiff in a pretrial settlement. The court ruled that because § 1983 does not address whether there should be setoffs by settlements, the trial court should look to 42 U.S.C. § 1988's provision that may allow a federal court to borrow a state remedy. The court set forth a three-part test: (1) determine whether federal law addresses the issue; (2) if it does not, look to see if the law of the forum addresses the issue; and (3) if it does, apply state law but only if it is not inconsistent with the Constitution and federal law. *Id.* at 1041-42. The court concluded that the trial court erred by following *Restivo v. Hessemann*, 846 F.3d 547 (2nd Cir. 2017), and only applying step three. *Burke*, 935 F.3d at 1043-45. The Tenth Circuit ruled that the better approach is to follow *Dobson v. Camden*, 705 F.2d 759 (5th Cir. 1983), *reversed on other grounds*, 725 F.2d 1003 (5th Cir. 1984), and make a case-by-case and state-by-state

analysis. *Burke*, 935 F.3d at 1047.

26.     Previously, another district court in this circuit followed *Dobson* and held that a defendant in a § 1983 case could assert a setoff defense based on plaintiff's settlement with another defendant. *McCubbin v. Weber Cty.*, Consolidated Case Nos. 1.15-cv-132 & 1.15-cv-133, 2018 WL 6602210 (D. Utah December 17, 2018).

27.     The Third Circuit recognized a right of contribution among defendants in a § 1983 action based on federal common law in *Miller v. Apartments and Homes of New Jersey, Inc.*, 646 F.2d 101, 108 (3rd Cir. 1981). Some recent cases have concluded that *Miller* was effectively overruled by *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77 (1981), and *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981), which held that federal courts cannot create a federal common law right of contribution where a federal statute does not provide for it. *See Hay v. Somerset Area Sch. Dist.*, Case No. 3:16-cv-229, 2017 WL 5029057 (W.D. Pa, Oct. 31, 2017) (reviewing Third Circuit cases on the issue). But, the Supreme Court has decided this issue and some courts, even after citing *Hay*, continue to analyze the existence of a right of contribution among defendants in § 1983 actions by using § 1988 to look to the state contribution statute – the same approach used by the Tenth Circuit in *Burke*. *Smart v. Allegheny Cty.*, Case No. 2:15-cv-953, 2018 WL 10230904 (W.D. Pa., May 31, 2018) (but holding that the wording of the Pennsylvania contribution statute did not apply in this case).

28.     If the Court reaches the point in this case of applying the test in *Burke*, Colorado law does allow determinations of percentages of "fault" and contribution among

11

defendant parties under the combined analysis of C.R.S. § 13-21-111.5 and the Uniform Contribution Among Tortfeasors Act ("UCATA"), C.R.S. § 13-50.5-102. *Graber v. Westaway*, 809 P.2d 1126, 1127-29 (Colo. App. 1991), citing *Watters v. Pelican International, Inc.*, 706 F. Supp. 1452 (D. Colo. 1989). Under these cases, a tortfeasor can seek contribution even where the party seeking contribution failed to file a designation of nonparty.

29. Colorado law provides for a right of contribution among tortfeasors in these circumstances. Under the UCATA, where two or more persons become jointly or severally liable in tort for the same injury or wrongful death, "there is a right of contribution among them even though judgment has not been recovered against all or any of them." C.R.S. § 13-50.5-102(1). In other words, in contrast to what Hospital Third-Party Defendants argue, the right of contribution may be asserted before a judgment has been entered.

30. The UCATA also provides that the "right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." C.R.S. § 13-50.5-102(2). Hospital Third-Party Defendants apparently contend that the use of the past tense in this sentence means that the judgment and payment must precede assertion of the contribution right, and is an element of a contribution claim. (Doc. 50, p. 9.) But, that is not an element of a contribution claim and their interpretation would render meaningless the sentence about the right arising before judgment, as quoted above from subsection (1). The interpretation that makes the two sentences consistent is that the

quoted provision from subsection (2) limits the amount of the contribution right, not the timing of its assertion. There is nothing in the UCATA or the comparative fault statute that requires that the contribution right be enforced only in the delayed manner favored by Hospital Third-Party Defendants.

31. Hospital Third-Party Defendants cite *Watters* for the proposition that County Defendants' Third-Party Complaint for contribution is "unavailable" because County Defendants did timely file a nonparty designation (Doc. 50, p. 10), but that is not the factual situation nor the holding of *Watters* or *Graber*. Both cases happen to involve a situation where the contribution claim was brought after the resolution of the first case, but the cases stand for the broader proposition that the contribution claim may proceed without a designation of nonparty at all, and that these statutes do not present the exclusive means to raise the contribution issue. Therefore, County Defendants are not barred from raising contribution and allocation of fault with Third-Party Defendants by impleader within one proceeding.

32. Hospital Third-Party Defendants also argue under the "enforcement" section of the UCATA, § 13-50.5-104(4), that if no judgment has been entered, a contribution claim is barred unless the tortfeasor seeking contribution has either (a) paid the entire "common liability," or (b) agreed while the action is pending to discharge the "common liability" and has, within one year after the agreement, paid the liability and commenced the action for contribution. (Doc. 50, p. 10.) But, this statute only applies where there has been a determination or admission as to the "common liability," which has not occurred by

settlement or some other means (County Defendants denied liability in their answer to the complaint). Therefore, there is not yet anything to "enforce," and this subsection of the UCATA is inapplicable.

33. Hospital Third-Party Defendants urge leaving the contribution issue for a later lawsuit. This position appears to concede that County Defendants' contribution claim is appropriate but that the timing is wrong. But the better and legally permitted solution is to allow the Third-Party Complaint and have the issues resolved in one proceeding. The Colorado Supreme Court recognized this in *National Farmers Union Prop. & Cas. Co. v. Frackelton,* 662 P.2d 1056, 1064 (Colo. 1983), when it stated that comparative negligence and contribution raise many difficult issues, but:

> Fortunately, most theoretical multiple party problems can be resolved simply by joinder of potential tortfeasors and resolution of contribution issues in the initial cause of action. For example, in this case San Miguel could have prevented the ensuing controversy by impleading Frackelton as a third-party defendant.

34. Here, for what is likely strategy reasons, Plaintiffs failed to name Third-Party Defendants as parties, though in their complaint they were quite critical of the conduct of Third-Party Defendants. Rule 14 is to be interpreted liberally, in a way that is fair to the parties. Given the facts as plausibly pled by County Defendants, Third-Party Defendants should not be dismissed.

WHEREFORE, County Defendants request that this Court deny the Motion to Dismiss of Hospital Third-Party Defendants.

Respectfully submitted,

Date: 12/10/20

s/ Gordon L. Vaughan
Gordon L. Vaughan
VAUGHAN & DeMURO
111 South Tejon, Suite 545
Colorado Springs, CO 80903
(719) 578-5500 (phone)
(719) 578-5504 (fax)
gvaughan@vaughandemuro.com (e-mail)
ATTORNEY FOR COUNTY DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Darold Killmer**
dkillmer@kln-law.com

**Reid Allison**
rallison@kln-law.com

**Liana Orshan**
lorshan@kln-law.com

**Michael Fairhurst**
mfairhurst@kln-law.com

**Simone Montoya**
smontoya@messner.com

**Paul Faraci**
pfaraci@faracileasure.com

**Jessie Marie Fischer**
jfischer@faracileasure.com

**Karen DuWaldt**
karen@kdemploymentlaw.com

15

**Stephen J. Hensen**
steve@hendulaw.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

s/ Gordon L. Vaughan
Gordon L. Vaughan
